**MEASOR, Appellant and Cross–Appellee,**

v.

**MEASOR, n.k.a. Stroy, Appellee and Cross–Appellant.**

[Cite as *Measor v. Measor,* 160 Ohio App.3d 60, 2005-Ohio-1417.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2002–G–2491.

Decided March 25, 2005.

62

James B. Davis, for appellant and cross-appellee.

A. Pearce Leary, for appellee and cross-appellant.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant and cross-appellee, Dennis G. Measor, appeals the November 20, 2002 judgment entry of the Geauga County Court of Common Pleas, Domestic Relations Division.

{¶ 2} Appellant and appellee and cross-appellant, Judy K. Stroy, f.k.a. Measor, were married on October 17, 1992. No children were born of the marriage, although appellee had two children from a previous marriage, both of whom are emancipated. Appellant filed for divorce on May 2, 2001. A majority of the issues had been resolved via a joint stipulation. The remaining issues to be addressed were (1) the net equity in the marital home and the distribution of that equity and (2) the amount of passive appreciation that had accrued on each party's retirement accounts and how it was to be distributed. A trial was held on March 6, 2002, and the trial court rendered its findings of fact and conclusions of law on November 20, 2002.

{¶ 3} The trial court awarded appellee sole ownership of the marital residence and all the equity as well as all appreciation in her retirement account. Appellant was awarded the appreciation in his retirement account and a payment of $26,824.89 from appellee to equalize the property distribution.

{¶ 4} Appellant filed a motion for relief from judgment, pursuant to Civ.R. 60(A), contending that he was entitled to relief for a clerical mistake in the judgment, as the trial court erred in calculating the net equity in the marital home. The trial court did not rule on the motion prior to the notice of appeal deadline. Appellant filed his notice of appeal on December 18, 2002, and appellee filed her notice of cross-appeal on December 30, 2002. Appellant filed his Civ.R. 60(A) motion with this court.

{¶ 5} Appellant presents three assignments of error on appeal. The first assignment of error is:

{¶ 6} "The court erred by incorrectly determining the net equity in the marital home, all of which it had previously found to be marital, and by awarding all of it to the defendant wife rather than dividing it equally as mandated by R.C. 3105.171(C)(1)."

{¶ 7} In his first assignment of error, appellant contends that the trial court erred in calculating the net equity in the marital home and by awarding all of the equity to appellee, rather than distributing it equally.

{¶ 8} R.C. 3105.171 governs the distribution of property in a divorce. The trial court must determine whether particular property is marital or separate in nature and then make a distribution of the property.[1] As a general principle, the division of marital property is required to be equal.[2] If an equal division of marital property would be inequitable to the parties, the court must divide the marital property in a manner that it deems equitable.[3]

{¶ 9} The trial court's distribution of marital property will not be disturbed on appeal absent an abuse of discretion.[4] An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.[5]

{¶ 10} Separate property is property that a spouse acquired an interest in before the marriage.[6] Marital property is real or personal property that is currently owned by either or both spouses and that was acquired by either or

---

1. R.C. 3105.171(B).

2. R.C. 3105.171(C)(1).

3. Id.

4. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.

5. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

6. R.C. 3105.171(A)(6)(a)(ii).

both spouses during the marriage.[7] Any property acquired during the marriage is presumed marital unless it can be demonstrated that it is separate.[8]

{¶ 11} In the instant case, appellee and appellant each owned homes prior to their marriage. After marrying, the couple elected to reside in appellee's home, and appellant's home was put on the market and eventually was sold. The proceeds of the sale were placed in the couple's joint account. Some of those monies were used to pay down the mortgage on appellee's home to approximately $70,000.

{¶ 12} Approximately one year into the marriage, the couple elected to refinance the home in order to take advantage of more favorable interest rates. They also elected to shorten the term of the loan from 30 years to ten years. The house was appraised at that time. Appellant testified at the divorce hearing that he believed the house was valued at $140,000 at that time. However, according to the appraiser's report done in tandem with the refinance, the house was appraised at $158,000. The new mortgage was taken out for a principal sum of $70,000 in both appellee's and appellant's names.

{¶ 13} Later that year, while considering estate-planning options, the parties discussed making appellant an equal owner of the premises. Appellee agreed to appellant's becoming a part owner but also wished to give her equity in the home, which accrued before her marriage to appellee, to her children. The parties then executed a mortgage deed and promissory note to appellee's children in the amount of $70,000. Appellee also executed a joint and survivorship deed to herself and appellant. As a result of this series of transactions, the parties believed that they had removed the existing equity in the home and had given it to appellee's children so that appellee and appellant stood in a position of equality with regard to the property. The title on the home was subsequently changed to include appellant's name.

{¶ 14} In its findings of fact and conclusions of law issued following the divorce trial, the trial court concluded the following:

{¶ 15} "29. The Court finds that the property appreciated in value during the marriage to $265,000.00.

{¶ 16} "30. The mortgage on the premises was paid down to $14,890.13 during the marriage.

{¶ 17} "31. The residence had a fair market value in late 1993 of $140,000; $70,000 of which was Wife's separate property and the equity in the property.

---

7. R.C. 3105.171(A)(3)(a)(i).

8. *Kampf v. Kampf* (May 3, 1991), 11th Dist. No. 90–A–1503, 1991 WL 70785.

{¶ 18} "32. The Wife's equity of $70,000.00 was given to her children by mortgage.

{¶ 19} "33. The appreciation in the property during the marriage was $125,000.00 ($265,000.00 less $140,000.00) and is marital property.

{¶ 20} "34. The sum of $14,890.13 was marital debt, leaving net marital equity of $110,109.87 in the marital residence."

{¶ 21} Later in its findings, the court awarded sole ownership of the property to appellee with the caveat that appellee should pay appellant the sum of $26,824.89 to equalize the property distribution.[9]

{¶ 22} In his first assignment of error, appellant asserts that the trial court erred in its calculation of the net equity in the marital home and in awarding all of the equity to appellee. We agree in both matters.

{¶ 23} Initially, we begin by noting that the trial court correctly determined that the property was marital, as was all appreciation that accrued during the marriage. However, the trial court concluded at the outset that the fair market value of the home in 1993, the time of the refinancing, was $140,000. The only evidence in the record of that amount was appellant's testimony that he felt that the house was valued at that amount at that time. Appellee presented an expert appraiser who appraised the house at approximately $158,000 in October 1992. Moreover, appellee also presented the appraisal report from the 1993 refinancing, which placed the fair market value of the home then at $158,000. Therefore, based upon the evidence presented, the fair market value of the home at that time was $158,000, and not $140,000, as the trial court concluded.

{¶ 24} The court also concluded that the property had a fair market value of $265,000 on the date of trial. Appellant presented an expert appraiser who appraised the home at $265,000 on the date of trial. Appellee presented an expert appraiser who testified that the home was valued at $236,000 on the date of trial. There was also evidence presented that the parties entered into a listing agreement to sell the home approximately one year before the divorce trial and, at that time, listed the home at $260,000. We find that the trial court did not err in concluding that the home had a fair market value of $265,000 on the date of trial.

---

9. See paragraph numbers 63 through 65 in the trial court's findings of fact and conclusions of law, where the trial court also ordered each party to retain his or her own retirement savings plans along with any passive appreciation that had accrued therein. The issue of appreciation in the retirement plans will be addressed in our analysis of appellant's second assignment of error.

{¶ 25} Evidence presented at trial revealed that the mortgage on the property had been paid down to $14,890.13, a figure that the trial court adopted in its findings. Thus, the current fair market value of the property at the time of trial was $265,000. The parties had executed a mortgage deed and promissory note to appellee's children for $70,000, which represented appellee's equity in the home and was intended to equalize the parties' ownership interest in the party. The remaining mortgage amount of $14,890.13 is marital debt. Thus, subtracting the $70,000 mortgage deed executed to appellee's children, as well as the $14,890.13 in marital debt, leaves a net marital equity of $180,109.87, which should be equally divided between the parties for a total of $90,054.94 each.[10]

{¶ 26} Therefore, based on the foregoing calculations, we conclude that the trial court erred in determining the net equity in the marital home and in awarding all equity, which was marital property, to appellee. Appellant's first assignment of error has merit.

{¶ 27} Appellant's second assignment of error is:

{¶ 28} "The trial court erred when it failed to award plaintiff any appreciation upon his Rockwell Automation Employee Retirement Savings Plan."

{¶ 29} In his second assignment of error, appellant contends that the trial court erred in failing to award him any appreciation on his retirement account. Specifically, appellant contends that the trial court erred in rejecting the conclusions of appellant's expert witness presented at trial regarding the passive appreciation in the retirement account and by not awarding that passive appreciation to appellant.

{¶ 30} We begin by noting that the trial court elected to allow both parties to retain their respective Retirement Savings Plans ("RSP"), we presume in order to avoid encumbering either pension. However, as noted above, the trial court must recalculate the distribution of the net equity in the marital home. Therefore, the court must also recalculate the pension plans and determine whether a setoff is in order to provide an equitable distribution of the marital property.[11]

{¶ 31} When they married, the parties both worked for the same employer, Rockwell Automation. Both parties maintained a Rockwell Automation Employee RSP. It was stipulated that just before the marriage appellant's RSP balance was $53,216, appellee's balance was $12,237, and each of these amounts was separate property.

---

10. R.C. 3105.171(C)(1) requires that all marital property be equally divided unless the trial court makes a specific finding that such a division would be inequitable.

11. See R.C. 3105.171(C)(1).

{¶ 32} During the marriage, each of the accounts grew significantly. Appellant's RSP balance on the date of trial was $194,348, while appellee's RSP balance at the time of trial was $96,874. Each party had made yearly contributions to the plans as did the employer through matching funds. The accounts were maintained by a professional money manager with neither party taking an active role in managing the funds.

{¶ 33} At trial, appellant presented his own testimony and expert testimony by an accountant, Kathryn M. Lyle, C.P.A., regarding the issue of passive appreciation on the original balances during the marriage.

{¶ 34} Lyle used the quarterly statements from the RSP and from those included a small rollover from appellant's retirement account with a previous employer and calculated passive appreciation in the account. Lyle determined that passive appreciation included reinvested interest, dividends, and changes in market value but not employee or employer contributions or appreciation therefrom. Lyle performed calculations on both appellant's and appellee's accounts to determine passive appreciation. She ultimately concluded that the passive appreciation on appellee's beginning balance of $12,237 totaled $23,806. In other words, the original balance had doubled due to passive appreciation.

{¶ 35} Lyle concluded that the passive appreciation on appellant's beginning balance of $53,216 totaled $103,528, also an approximate doubling in value based solely on passive appreciation. Lyle then deducted the passive appreciation totals from the ending account balances on the date of the trial and determined the difference to be marital appreciation. Lyle also determined that appellant would have to pay appellee a sum of $4,035 in order to equalize the accounts.

{¶ 36} In its findings of fact and conclusions of law, the trial court concluded, "[t]he calculations and conclusions of Kathryn M. Lyle, CPA, are unreliable and should not be given any probative weight." The court presented four bases for its rejection of Lyle's testimony:

{¶ 37} "a. Her conclusion that the marital portion of Husband's increase in value of his Rockwell RSP is $81,138.00 when Husband and his employer's combined contributions during the marriage exceeded $100,000.00 is unacceptable on its face.

{¶ 38} "b. Ms. Lyle's use of an average rate of return instead of the actual rate of return over the course of the marriage is improper.

{¶ 39} "c. There are many missing historical records from both parties' RSP documents, necessitating the use of estimates, which is improper.

{¶ 40} "d. Passive income is income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse during the marriage. Husband failed to prove those marital contributions, including any earnings thereon."

{¶ 41} The court concluded that appellant had maintained the burden of establishing by a preponderance of the evidence that the passive appreciation in the RSP was separate property and did not meet that burden. The court ultimately concluded that all appreciation in each RSP during the marriage was marital and then ordered that each party keep his or her own RSP, including any accrued appreciation.

{¶ 42} When determining benefits under a pension or retirement fund, the trial court must attempt to preserve the asset so that each party receives the most benefit.[12] Moreover, retirement benefits acquired by either spouse during the marriage are marital assets to be included in an equitable distribution of marital property.[13] The trial court must determine the total value of the retirement account but has wide latitude regarding the method employed in the valuation.[14] The trial court's judgment will not be reversed on appeal absent an abuse of discretion.[15]

{¶ 43} Where, as in this case, a party seeks to have a portion of the appreciation in a retirement account deemed passive and separate, that party bears the burden of establishing such by a preponderance of the evidence.[16] Passive income is defined as that which is acquired other than as a result of the labor or monetary or in-kind contribution of either spouse during the marriage.[17]

{¶ 44} In attempting to meet his requisite burden, appellant presented the expert testimony of Lyle. Lyle's report was admitted into evidence at trial. However, the trial court ultimately concluded that appellant had not met his burden of establishing by a preponderance of the evidence that the passive appreciation in the RSP was separate property. The court provided four bases for its findings, which included a rejection of Lyle's appreciation calculations and her ultimate conclusions regarding the valuation of the RSP.

---

12. *Maiorana v. Maiorana,* 11th Dist. No. 2003–L–067, 2004-Ohio-3925, 2004 WL 1662217, at ¶ 13, citing *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 181, 559 N.E.2d 1292.

13. *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308.

14. *Spurlock v. Spurlock* (Dec. 15, 1995), 11th Dist. No. 94–A–0026, 1995 WL 869966, at *6.

15. *Bisker,* at 609, 635 N.E.2d 308.

16. *White v. White* (Oct. 12, 2001), 11th Dist. No. 2000–P–0036, 2001 WL 1216959.

17. See R.C. 3105.171(A)(4); *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 401, 696 N.E.2d 575.

{¶ 45} Therefore, we conclude that the trial court did not abuse its discretion in not awarding appellant passive appreciation on the RSP. Appellant's second assignment of error is without merit.

{¶ 46} Appellant's third assignment of error is:

{¶ 47} "The court erred in giving plaintiff-appellant no credit for separate property consisting of a $9,682.00 rollover into his 401(K) plan from an account he had owned prior to marriage despite undisputed evidence as to the source and amount."

{¶ 48} Appellant asserts that the trial court erred in not deeming a rollover into his RSP from a previous employer to be separate property and that he appropriately established the monies as separate property.

{¶ 49} Separate property includes all real and personal property that was acquired by one spouse prior to the marriage.[18] Separate property has been categorized under the statute into seven classifications, some of which include:

{¶ 50} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

{¶ 51} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage."

{¶ 52} The party seeking to have property deemed separate pursuant to R.C. 3105.171 has the burden of establishing separateness by a preponderance of the evidence.[19] In order to establish separate property when it is commingled with property of any other type, the source of funds must be traceable.[20] "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."[21]

{¶ 53} In the instant case, Lyle testified during direct examination that her calculations included an additional rollover amount. She never testified to the exact figure or its specific source. She testified that her final appreciated amount was $113,210 and that after deducting the rollover amount, the appreciated amount then totaled $103,528. The difference between those figures is $9,682. This is the figure appellant alleges was rolled over from his previous employment.

---

18. R.C. 3105.171(A)(6)(a)(ii).

19. *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

20. *Balogh v. Balogh* (Dec. 29, 1995), 11th Dist. No. 94–P–0099, 1995 WL 815504, 1995 Ohio App. LEXIS 5851, at *6–7.

21. R.C. 3105.171(A)(6)(b).

{¶ 54} Appellant also cites his own testimony regarding the rollover. He testified that he worked at Warner & Swasey from 1969 to 1979, and during that time, he had a retirement account that totaled approximately $9,000, which was rolled over into the Rockwell retirement plan. Appellant contends that he met his burden. We disagree.

{¶ 55} Appellant and Lyle testified about the rollover amount and, as noted by appellee, Lyle's report reveals a rollover contribution in the amount of $9,372.17 between April 1, 2001, and June 30, 2001. The report, however, does not reveal the source of the rollover, and this figure does not comport with the $9,682 rollover amount now asserted by appellant. Thus, a mere reference to a rollover amount, with nothing more by way of documentation providing an indication of the exact amount or source of the funds, does not adequately trace the funds and establish separate property.

{¶ 56} Therefore, we conclude that the trial court did not err in finding that appellant had not adequately traced any rollover of a previous retirement fund. Appellant's third assignment of error is without merit.

{¶ 57} Appellee presents two cross-assignments of error on appeal. The first cross-assignment of error is:

{¶ 58} "The trial court erred in failing to award cross-appellant, Judy Stroy [Measor], her separate interest in the appreciation of the value of her separate property, to wit: the real estate located at 18240 Snyder Road, Bainbridge Township, Ohio."

{¶ 59} In her first assignment of error, appellee contends that the marital home was her separate property, and any appreciation in the value of the property should have been awarded to appellee.

{¶ 60} As noted above, separate property includes real and personal property that was acquired by one spouse before the marriage.[22] Moreover, the burden of establishing separate property is on the proponent of the claim, to be established by a preponderance of the evidence.[23]

{¶ 61} The trial court's determination that property is either marital or separate necessarily involves a factual inquiry. Thus, an appellate court must apply a manifest-weight-of-the-evidence standard of review to the trial court's findings of whether a given asset is marital or separate.[24] Therefore, the

---

22. R.C. 3105.171(A)(6)(a)(ii).

23. *Peck*, 96 Ohio App.3d at 734, 645 N.E.2d 1300.

24. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989.

judgment of the trial court will not be reversed if the court's decision is supported by competent, credible evidence.[25]

{¶ 62} In her assignment of error, appellee is heard to argue that the real property at issue is her separate property, as was the appreciation in the fair market value of the home. This contention is wholly contradictory to the findings of the trial court and the evidence presented at trial.

{¶ 63} As a general matter, a spouse can convert separate property into marital property through his or her actions during the course of the marriage.[26] The real property at issue was originally appellee's property before the marriage. However, the series of transactions that occurred shortly after the marriage was, by intention of the parties, an attempt to provide equal ownership of the property and render it marital property.

{¶ 64} Both parties owned their own residences prior to the marriage. At the beginning of the marriage, appellant placed his home for sale and deposited the proceeds of the sale in a joint account. A portion of those monies was used to pay down the mortgage on appellee's home. Within a year, the parties elected to refinance appellee's home, and, at that time, both parties executed the mortgage for $70,000. Later that year, the parties executed a mortgage deed and promissory note to appellee's children for $70,000, appellee's equity in the home. Both parties testified that it was their intention to have a marriage of equals, and the mortgage note to appellee's children was an attempt to equalize both parties' ownership interest in the property, as there was no equity remaining in the home.

{¶ 65} Further evidence of this intent was the addition of appellant's name on the title of record. The holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.[27] However, it was through these series of transactions and the underlying intent to equalize that appellee converted her separate property into marital property.[28]

{¶ 66} Appellee's only argument that the property remained separate is her contention that appellant should have been awarded only the costs he incurred in

---

**25.** *Price v. Price* (Jan. 25, 2002), 11th Dist. No. 2000–G–2320, 2002 WL 99534, 2002 Ohio App. LEXIS 240, at *12.

**26.** *Helton v. Helton* (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157.

**27.** R.C. 3105.171(H).

**28.** See R.C. 3105.171(A)(3)(a); *Moore v. Moore* (1992), 83 Ohio App.3d 75, 78, 613 N.E.2d 1097.

performing improvements on the property, as the property and its appreciation in value remained her separate property. Based on the foregoing, we find that argument unpersuasive. The trial court's determination that the property at issue and its appreciation were marital is not against the manifest weight of the evidence.

{¶ 67} Appellee's first cross-assignment of error is without merit.

{¶ 68} The second cross-assignment of error is:

{¶ 69} "The trail [sic] court erred in its valuation of the Snyder Road real estate both at the beginning and at the end of the marriage."

{¶ 70} In her second cross-assignment of error, appellee contends that the trial court erred in its valuation of the real estate at both the beginning and end of the marriage. Appellee's entire argument is based on her contention that the property remained her separate property throughout the marriage. Therefore, she posits that a valuation of the property is "not relevant, except to provide context" and should be utilized only if the party asserting a separate interest fails to sustain her burden, and the appreciation is then marital and must be divided equally.[29]

{¶ 71} Such is the case here. As we concluded in the previous cross-assignment of error, appellee did not meet her burden of establishing by a preponderance of the evidence that the real estate was separate property. Thus, as the trial court properly concluded that the property and its appreciation were marital property, a proper determination as to the fair market value of the property both at the beginning and the end of the marriage is required to determine the net marital appreciation.[30] The trial court is vested with wide latitude in formulating an equitable distribution of property.[31] Although we concluded in appellant's first assignment of error that the trial court did not utilize the appropriate figure in establishing the fair market value at the beginning of the marriage and did not equally distribute the property and the net marital appreciation, we ultimately concluded that the trial court correctly determined the property and its appreciation to be marital property.

{¶ 72} Therefore, appellee's assertion that the trial court erred in its valuation of the property is not well taken. Appellee's second cross-assignment of error is without merit.

---

29. *Middendorf*, 82 Ohio St.3d at 401, 696 N.E.2d 575.

30. *Bushman v. Bushman* (Mar. 31, 1989), 11th Dist. No. 1442, 1989 Ohio App. LEXIS 1137, at *5–6.

31. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 130, 541 N.E.2d 597.

{¶ 73} Based on the foregoing analysis, appellant's first assignment of error has merit. The remaining assignments of error and cross-assignments of error are without merit. Thus, the judgment of the trial court is affirmed in part and reversed in part, and the matter is remanded to the trial court for a recalculation and redistribution of the net equity in the marital home and for a recalculation of the RSP distributions.

Judgment accordingly.

DONALD R. FORD, P.J., concurs.

CHRISTLEY, J., dissents.

JUDITH A. CHRISTLEY, J., retired, of the Eleventh Appellate District, sitting by assignment.

JUDITH A. CHRISTLEY, Judge, dissenting.

{¶ 74} I respectfully dissent from the majority's single finding of error in the trial court's valuation of the house and its equity as of 1993. The trial court's judgment entry determined at paragraph 23 that "as result of this transaction and Exhibit[s] 7, 9, 10 and 11 the parties believed that they had removed the existing equity in the property and given it to the wife's children so they stood in position of equality with regard to the premise as they went forward."

{¶ 75} The issue here is whether there was some competent, credible evidence properly available to the trial court in making its determination that the fair market value was $140,000 as opposed to $158,000. See, e.g., *Habbyshaw v. Habbyshaw* (Sept. 30, 1993), 11th Dist. No. 93–P–0006, 1993 WL 406577.

{¶ 76} The record demonstrates that there was testimony by both parties that in 1993 they gave a $70,000 mortgage to the wife's children. There was testimony from both parties that shortly thereafter, they refinanced the property with a mortgage. The husband testified that he believed the value at that time was $140,000. Thus, there was some competent, credible evidence as to the value of the house in December 1993.

{¶ 77} The figures relied upon by the majority were from appraisals made in 1992. For the majority to reach the conclusion that the $158,000 figure was the more accurate amount, it had to weigh the evidence and assess credibility. Cf. *Debevec v. Debevec*, 11th Dist. No. 2002–P–0126, 2004-Ohio-2927, 2004 WL 1238609, at ¶ 25, (holding that when determining the value of property in a divorce proceeding, the trial court is in the best position to weigh the evidence and assess witness credibility). Instead, the majority should have limited itself to the simple determination of whether some competent, credible evidence existed to support the trial court's finding. Id.

{¶ 78} The trial court's entry was supported by some competent, credible evidence, even though a different fact finder might have come to a different conclusion. See, e.g., *White v. White,* 4th Dist. No. 03CA11, 2003-Ohio-6316, 2003 WL 22781258, at ¶ 23. The trial court's conclusion was not inherently incorrect.

{¶ 79} Thus, I would affirm as to the entire appeal.