[Cite as *Reed v. Reed*, 2017-Ohio-8350.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: ESTATE OF DAVID N. REED

    Appellee

    v.

PENNY REED

    Appellant

C.A. Nos.     16CA0063-M
               16CA0068-M
               16CA0069-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE Nos.    2015 02 ES 00094
              12 DR 0089

DECISION AND JOURNAL ENTRY

Dated: October 30, 2017

SCHAFER, Judge.

{¶1} Defendant-Appellant, Penny Reed ("Wife"), appeals the joint judgment of the Medina County Court of Common Pleas, Domestic Relations Division, and the Medina County Court of Common Pleas, Probate Division. For the reasons set forth below, we affirm.

I.

{¶2} In 2012, David Reed ("Husband") filed a complaint for divorce from his wife, Penny Reed ("Wife"). In 2013, the trial court journalized a divorce decree that resolved all of the issues involved in the divorce except the division of some items of nonmarital property that the parties contested. Consequently, when Wife attempted to appeal the decree, this Court concluded that the trial court's order was not final and appealable. In the meantime, Husband became gravely ill. In February 2014, facing a worsening prognosis, Husband disavowed his

interest in the contested nonmarital property, leaving the remainder of the property division uncontested. Husband died on February 26, 2015.

{¶3} Husband's daughter initiated probate proceedings, and because of the action still pending in domestic relations court, the administrative judge of the trial court assigned all proceedings to the domestic relations judge. Wife participated in the probate proceedings as a putative surviving spouse, and in that capacity, she elected to take against the will. In the alternative, Wife filed a claim against Husband's estate for all property to which she would be entitled under the divorce decree. On August 2, 2016, the trial court judge entered an order in both cases that resolved the remaining separate property issues, incorporated the divorce decree, and dismissed Wife's election to take against Husband's will. Wife filed this appeal.

II.

**Assignment of Error I**

**The trial court erred in finding that Husband and Wife were divorced prior to Husband's death.**

{¶4} Wife's first assignment of error argues that the trial court erred by determining that the divorce action did not abate upon Husband's death. We disagree.

{¶5} R.C. 2311.21 provides that "[u]nless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, for a nuisance, or against a judge of a county court for misconduct in office, which shall abate by the death of either party." Nonetheless, divorce is also recognized by Ohio courts as an action that may abate upon the death of a party. *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 99 (1996). The Ohio Supreme Court has also concluded, however, that when a divorce action has been heard, but the decree has not yet been journalized, the action does not abate, and the decree may be journalized after the death of a

party. *Caprita v. Caprita*, 145 Ohio St. 5 (1945), paragraphs three and four of the syllabus. "In divorce actions that also concern the division of property, a party's death does not mandate that the matter is abated; instead, in those circumstances, the domestic relations court is vested with the discretion to either dismiss the action or enter a nunc pro tunc judgment entry regarding the division of property." *In re Estate of Persing*, 11th Dist. Trumbull No. 2009-T-0120, 2010-Ohio-2687, ¶ 40, citing *Miller v. Trapp*, 20 Ohio App.3d 191, 192 (2d Dist.1984). *Accord Anderson v. Anderson*, 4th Dist. Ross No. 16CA3571, 2017-Ohio-2827, ¶ 15-30 (reviewing cases examining the abatement of divorce actions).

{¶6}   In this case, the trial court heard all matters related to the parties' divorce except the division of nonmarital property before issuing the 2013 decree. Husband disavowed an interest in the unresolved nonmarital property, leaving no issues unadjudicated at the time of his death in 2015. The trial court did not abuse its discretion by determining that the divorce action did not abate at that time and, thereafter, journalizing an order that divided that personal property and incorporated the 2013 decree that determined all other issues related to the divorce, including the dates of the marriage. Wife's first assignment of error is overruled.

## Assignment of Error II

**The trial court erred in finding that Husband had established a $189,000 separate property interest in the marital residence.**

## Assignment of Error III

**The trial court erred in finding that Husband had a $105,897.49 separate property interest in a joint investment account.**

{¶7}   In her second assignment of error, Wife contends that the trial court erred by finding that Husband had an $189,000.00 separate property interest in the marital residence. In

her third assignment of error, Wife argues that the trial court erred by finding that Husband had a $105,897.49 separate property interest in a Merrill Lynch cash management account (CMA).

{¶8} Pursuant to R.C. 3105.171(A)(6)(a)(i), the term "separate property" includes any interest in real or personal property that is found by the court to be "[a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage[.]" "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have property designated as separate bears the burden of proving its status by a preponderance of the evidence. *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 7. The burden to prove the separate identity of property can be met with "documents and/or testimony." *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 27. But "merely claim[ing] that the property * * * constitutes * * * separate property does not make it so." *Id*. at ¶ 28. The proponent must demonstrate the amount of separate property traced. *See Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 26; s*ee also Measor v. Measor*, 11th Dist. Geauga No. 2002-G-2491, 2005-Ohio-1417, ¶ 55 (finding funds not adequately traced when proponent failed to provide documentation of the exact amount or source of the funds). "Oral testimony as evidence of the separate nature of the property, without documentary proof, may or may not be sufficient to carry the burden." *Fisher v. Fisher*, 2d Dist. Montgomery No. 20398, 2004-Ohio-7255, ¶ 9.

{¶9} Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard. *Morris* at ¶ 23. When reviewing the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses,

and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10.

{¶10} Here, the trial court determined within the July 9, 2013 final judgment entry of divorce that Husband had an $189,000.00 separate property interest in the marital residence. The trial court ordered that the remaining equity in the marital residence is marital property and subject to equal division. Moreover, the trial court determined that Husband had a $105,897.49 separate property interest in the Merrill Lynch CMA, which carried a balance of $206,736.82 at the time of trial. The trial court ordered that the remaining balance of the investment account be divided equally between the parties.

### A. Marital Residence

{¶11} Wife raises two arguments in support of her assertion that the trial court erred by finding that Husband had an $189,000.00 separate property interest in the martial residence. First, Wife argues that there is no evidence in the record supporting the trial court's conclusion that the loans from Husband's father, which were used to build the marital residence, were forgiven as part of Husband's inheritance. Second, Wife contends that the trial court's factual findings do not support its conclusion that Husband had adequately traced the loan forgiveness to the Fox Chase Drive residence. We disagree with both arguments.

{¶12} At trial, Husband testified that his late father, John Reed, provided him with two separate loans so that he could purchase the parties' first home, and subsequently, the marital residence where the parties were living when Husband filed for divorce. The parties stipulated

before trial that the sums received from Husband's father were $62,500.00 in 1983 and $126,500.00 in 1993, for a total of $189,000.00. Husband testified that the first loan was made in 1983 in the amount of $62,500.00, which was used to purchase a home on Graham Road in Stow, Ohio. Husband testified that he and Wife ultimately sold that house in 1993 and "received proceeds over and above" what was still owed on the mortgage. Husband introduced a HUD settlement statement into evidence showing that the parties sold the house on Graham Road for a net profit of $109,006.41. Husband testified that he never repaid his father on the 1983 loan upon selling the house on Graham Road, but rather used all of the proceeds from that home sale, which included the initial $62,500.00 loan, along with a second loan from Husband's father for $126,500.00, to purchase land on Fox Chase Drive in Medina, Ohio, where he and Wife built a house. Husband testified that the marital residence on Fox Chase Drive cost approximately $200,000.00 to construct.

{¶13} Husband further testified that Wife was never required to sign on either loan from his father, but that Wife kept a ledger documenting all repayments made to his father. Husband stated that he made monthly interest payments to his father on both loans, but that he never made payments on the principal balance of either loan. Wife's ledger, which was introduced into evidence, confirms that Husband's father only received interest payments and never payments on the principal balances. The ledger also shows that no further payments were made to Husband's father following his death in 1994. Husband explained that upon his father's death, the balance of the two loans "was basically written off on my inheritance." Husband stated that his father made similar loans to his four siblings and that the balances of those respective loans were similarly written off of his siblings' inheritance. Husband testified that adjustments were made for each sibling's inheritance depending on how much they borrowed from their father, but that

the amount that each sibling received as inheritance was an equal amount. He also testified that his brother, Phil Reed, performed the accounting and distributed each sibling's remaining inheritance upon their father's death. Although Husband did not introduce a copy of his father's will into evidence at trial, he did introduce a monthly statement for a Merrill Lynch cash management account that identifies Husband's mother, Arlene Reed, as the executor of John Reed's estate, thus demonstrating that Husband's father did have a probate estate.

{¶14} Based on the foregoing, we cannot say that this is the exceptional case where the evidence weighs heavily in favor of the party seeking reversal. Husband presented evidence, by way of his own testimony and Wife's ledger, demonstrating that his father loaned him sums totaling $189,000.00, which he used to build the marital residence on Fox Chase Drive. Husband's testimony and the ledger also demonstrate that the principal balance of the both loans was never reduced, as only interest payments were made to Husband's father during his lifetime. Husband testified that both loans were forgiven and written off of his inheritance upon his father's death in 1994. Moreover, since Husband "is the natural object of" his father's bounty, we deem "it is reasonable to infer that the purpose" of the loans was to benefit Husband, not Wife. *See Pullano v. Pullano*, 12th Dist. Butler No. CA96-07-126, 1997 WL 106316, *9 (Mar. 10, 1997), citing *Zimmer v. Zimmer*, 2d Dist. Greene No. 93 CA 25, 1994 WL 12459, *2 (Jan. 19, 1994).

{¶15} Lastly, Wife argues that Husband failed to adequately trace the loan forgiveness to the Fox Chase Drive residence beyond the original purchase. Specifically, Wife points to the trial court's finding that "Husband failed to provide evidence of whether or how much of the fair market value [of the marital residence] was enhanced as a result of the improvements" to the property, referring to the patio and barn that the parties built with marital funds. Wife contends

that "[b]ecause Husband failed to show what portion of the value of the now commingled Fox Chase Property is attributable to the original purchase and what value is attributable to the improvements, it is not possible to determine the value of Husband's alleged separate interest" in the marital residence. We reject this argument.

{¶16} At trial, Husband introduced a summary report from Medina Appraisal Company into evidence showing that the marital residence had an appraisal value of $330,000.00 as of November 5, 2012, thus showing a passive appreciation of $130,000.00 above the $200,000.00 original investment to build the residence. *See Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 6, quoting *Polakoff v. Polakoff*, 11th Dist. Trumbull No. 98-T-0163, 2000 WL 1121799, *4 (Aug. 4, 2000) ("[A]ppreciation that results from an increase in the fair market value of separate property due to its location or inflation is considered passive income."). The trial court found that 100% of the appreciation was marital property. Husband testified that during the marriage, the parties built a barn and a patio to the marital residence using $143,000.00 of marital funds. Wife specified that the patio cost $33,000.00 to construct, whereas the barn cost $110,000.00 to construct. Although the evidence shows that the parties spent more money building and improving the marital residence than the residence was worth as of the 2012 appraisal,[1] the trial court found that no evidence was presented demonstrating that the improvements increased the marital residence's fair market value. We cannot say that the trial court's finding on this point is against the manifest weight of the evidence, especially since

---

[1] The original investment ($200,000.00) coupled with the cost of the improvements to the marital residence ($143,000.00) exceeds the 2012 appraisal value of the property ($330,000.00).

the costs of labor and materials that are invested in real estate improvements do not directly correlate to an increase in the fair market value. *See Duffey v. Duffey*, 10th Dist. Franklin No. 01AP-709, 2002 WL 264595, \*6 (Feb. 26, 2002).

{¶17} Accordingly, we conclude that the trial court did not err by finding that Husband had an $189,000.00 separate property interest in the martial residence.

## B. Merrill Lynch CMA

{¶18} Wife argues that the trial court's determination that the Merrill Lynch CMA balance was traceable to Husband's separate property was unsupported by the evidence. We disagree.

{¶19} At trial, Husband testified that upon his father's death in 1994, money was distributed from his father's Merrill Lynch CMA to him and his four siblings in equal shares. Husband introduced the November 26, 1994 – December 30, 1994 monthly statement from his father's Merrill Lynch CMA into evidence, which reflects a line item of each sibling's respective inheritance from that account. Husband testified that he inherited investments totaling $124,000.00 from this distribution. Husband placed his entire inheritance into his own Merrill Lynch CMA. Husband testified that his Merrill Lynch CMA has always been divided into two distinct portions: an investment portion and a cash portion. Husband testified that part of his paycheck went into the cash portion of the CMA, which he does not dispute is marital property. However, as reflected within the exhibits introduced into evidence at trial, the value of Husband's CMA investment portfolio as of April 1, 1995, amounted to $105,897.49. Moreover, Husband testified that upon inheriting from his father's CMA, he left his investments untouched in his own CMA and that neither he nor Wife ever added or subtracted any amount from the CMA. Husband testified that the CMA appreciated approximately $30,000.00 between 1994 and

1997, to a total value of $147,247.00. Husband testified that his CMA had a balance of $206,000.00 as of the date of trial.

{¶20} Based on the foregoing, we cannot say that this is the exceptional case where the evidence weighs heavily in favor of the party seeking reversal. Husband presented evidence, by way of his own testimony and monthly statements from his Merrill Lynch CMA, demonstrating that he inherited from his father's Merrill Lynch CMA in 1994. The exhibits introduced at trial reflect that Husband's investment portfolio amounted to $105,897.49 as of April 1, 1995. Lastly, the evidence demonstrates that Husband left the investment portion of his CMA account unchanged over the years, with neither he nor Wife ever adding or subtracting from that account. Accordingly, we cannot say that the trial court erred by determining that Husband had a $105,897.49 separate property interest in the Merrill Lynch CMA.

{¶21} Wife's second and third assignments of error are overruled.

III.

{¶22} Wife's three assignments of error are overruled. Accordingly, the joint judgment of the Medina County Court of Common Pleas, Probate Division, and the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

GARY M. ROSEN, Attorney at Law, for Appellant.

CHARLES E. GRISI, Attorney at Law, for Appellee.