[Cite as *Poulos v. Poulos*, 2024-Ohio-1769.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STEVEN POULOS

    Appellant/Cross-Appellee

v.

ANASTASIA POULOS

    Appellee/Cross-Appellant

C.A. No.    30592

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DR-2020-09-2494

DECISION AND JOURNAL ENTRY

Dated: May 8, 2024

SUTTON, Judge.

{¶1} Defendant-Appellant/Cross-Appellee, Steven Poulos ("Husband"), appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. Plaintiff-Appellee/Cross-Appellant, Anastasia Poulos ("Wife"), also appeals the judgment. For the reasons that follow, this Court affirms, in part, and reverses, in part.

I.

**Relevant Background**

{¶2} Husband and Wife were married for approximately 14-years, from May 25, 2008, through May 25, 2022. No children were born as issue of the marriage. On September 28, 2020, Wife filed a complaint for divorce against Husband. Husband filed an answer and counterclaim, to which Wife responded. The matter proceeded to trial on issues related to the division of the parties' property and spousal support. After an 11-day trial, the trial court issued a judgment entry granting the parties' divorce.

{¶3}    Husband appealed raising seven assignments of error for our review. Wife cross-appealed raising one assignment of error for our review.  We begin our analysis with Wife's sole assignment of error.  Additionally, we group and reorder certain assignments of error to facilitate our discussion.

## II.

### CROSS-APPEAL-ASSIGNMENT OF ERROR

**THE DECREE OF DIVORCE IS NOT A FINAL APPEALABLE ORDER DUE TO THE FAILURE OF THE TRIAL COURT TO PROVIDE CLEAR AND UNAMBIGUOUS ORDERS REGARDING THE PAYOUT OF THE CROSS-APPELLANT'S EQUITY IN 342 EAST CORAL TRACE, DELRAY, FLORIDA.**

{¶4}    In her sole assignment of error, Wife argues the decree of divorce is not a final, appealable order because the trial court failed to state "the method of the payout of [Wife's portion of the] equity" from the Delray property.

{¶5}    "The Ohio Constitution limits an appellate court's jurisdiction to the review of final judgments of lower courts."  *Keith v. Keith*, 9th Dist. Lorain No. 09CA009657, 2010-Ohio-1085, ¶ 4, citing Ohio Constitution, Article IV, Section 3(B)(2).  "Accordingly, this Court has jurisdiction to review only final and appealable orders."  *Id*.   "A divorce decree, which leaves issues unresolved, is not a final order."  *Id*., citing *Muhlfelder v. Muhlfelder*, 11th Dist. Lake Nos. 2000-L-183, 2000-L184, 2002-Ohio-1166, * 1.  Civ. R. 75(F) provides, in part, that a trial court:

> shall not enter final judgment as to a claim for divorce, dissolution of marriage, annulment, or legal separation unless one of the following applies:

> (1) The judgment also divides the property of the parties, determines the appropriateness of an order of spousal support, and, where applicable, either allocates parental rights and responsibilities, including payment of child support, between the parties or orders shared parenting of minor children[.]

{¶6}     Here, in dividing the parties' property, the trial court ordered the parties to transfer the property, which included monetary payouts to each party, within 30-days of the judgment entry.   Specifically, as to the Delray property, the trial court ordered Husband to pay Wife $95,571.11 of marital equity.  It is up to Husband to decide the means in which to implement the payout of the marital equity in the Delray property to Wife.  Indeed, if Husband does not transfer Wife's portion of the equity in the Delray property, or any other property or payout owed to Wife, within the 30-days ordered in the Judgment Entry, Wife may take further action to enforce the trial court's order.  This, however, does not affect the finality of the parties' divorce decree. *See Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶ 15 ("[I]n the context of a divorce proceeding, Civ.R. 75(F) prohibits a trial court from entering a final judgment unless (1) the judgment divides the parties' property, determines the appropriateness of an order of spousal support, and allocates parental rights and responsibilities, including the payment of child support, or (2) the judgment states that there is no just reason for delay and that the court lacks jurisdiction to determine any issues that remain.  Accordingly, a divorce decree is a final, appealable order, regardless of whether it calls for a QDRO that has not yet issued; the QDRO merely implements the divorce decree.").

{¶7}     Accordingly, Wife's sole assignment of error is overruled.


**APPEAL-ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING A DE FACTO TERMINATION DATE OF THE PARTIES' MARRIAGE.**

{¶8}     In his first assignment of error, Husband argues the trial court abused its discretion by not finding a de facto termination date of the parties' marriage.

{¶9}     "[T]he decision to use the final hearing date or another date when valuing property in a divorce action is a discretionary matter. The decision must reflect an unreasonable, arbitrary

or unconscionable attitude before this [C]ourt will reverse." *Budd v. Budd*, 9th Dist. Summit No. 25469, 2011-Ohio-565, ¶ 8, quoting *Schrader v. Schrader*, 9th Dist. Medina No. 2664-M, 1998 WL 46757, *3 (Jan. 21, 1998). *See also Berish v. Berish*, 69 Ohio St.2d 318, 319-20 (1982) (applying an abuse of discretion standard when establishing the duration of a marriage for purposes of valuation). According to R.C. 3105.171(A)(2)(a), the term "duration of the marriage" is defined as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce[.]" *Budd* at ¶ 8. We have previously noted that the statute "creates 'a presumption that the proper date for termination of marriage is the date of the final divorce hearing.'" *Budd* at ¶ 8, quoting *Bowen v. Bowen*, 132 Ohio App.3d 616, 630 (9th Dist.1999), quoting *Kohler v. Kohler*, 9th Dist. Lorain No. 96CA006313, 1996 WL 455850, *5 (Aug. 14, 1996.). "If the trial court determines that use of the final hearing date would be inequitable given the circumstances of the parties, however, the statute permits the court to 'select dates that it considers equitable in determining marital property.'" *Budd* at ¶ 8, quoting R.C. 3105.171(A)(2)(b). "[W]hile the statute permits the trial court to select the date of separation as a de facto termination date in place of the statute's presumption, such action is clearly not mandated[.]" *Budd* at ¶ 8, quoting *Bowen* at 630. A trial court should only impose a de facto termination date where the evidence "clearly and bilaterally shows that it is appropriate based on the totality of the circumstances." *Budd* at ¶ 8, quoting *Boggs v. Boggs*, 5th Dist. Delaware No. 07CAF020014, 2008-Ohio-1411, ¶ 66.

{¶10} Here, the trial court determined May 25, 2022, the first day of the parties' divorce trial, as the proper termination date for the parties' marriage. In so doing, the trial court considered that the parties continued to reside together in the marital residence after the divorce was filed on September 28, 2020, until the sale of the marital residence in January 2021. The trial court further

determined the parties were still financially tied to one another, and Wife believed the parties were still married during the trial on this matter. Further, although Husband argued for several earlier de facto termination dates, the evidence before the trial court did not "clearly and bilaterally" show that it would be appropriate to use another termination date based on the totality of the circumstances.

{¶11} Based upon this record, we cannot say the trial court abused its discretion in determining May 25, 2022, as the termination date of the parties' marriage.

{¶12} Accordingly, Husband's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT'S CALCULATION OF HUSBAND'S SEPARATE PROPERTY INTERESTS IN DELRAY ARE ERRONEOUS AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT CREATED A MANIFEST MISCARRIAGE OF JUSTICE WHEN IT FOUND THE HUSBAND DID NOT PROVE WHAT PORTION OF THE ALLSTATE SETTLEMENT WAS COMPENSATION FOR HIS PERSONAL INJURY DAMAGES.**

## ASSIGNMENT OF ERROR V

**THE TRIAL COURT [PROPERLY] HELD THE DIAMOND ENGAGEMENT RING AND SAPPHIRE COCKTAIL RING ARE INTER VIVOS GIFTS CONDITIONED ON THE CONTINUATION OF THE PARTIES' MARRIAGE. HOWEVER, THE TRIAL COURT'S DECISION FOR HUSBAND TO COMPENSATE WIFE FOR THE VALUE OF THE RINGS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶13} In his second, third, and fifth assignments of error, Husband argues the trial court erred in dividing the parties' property. Specifically, Husband contends: (1) the trial court's calculation of Husband's separate property interest in the Delray property is erroneous; (2) the trial court created a manifest miscarriage of justice in determining Husband did not prove what portion

of his Allstate Settlement was separate property; and (3) the trial court erred in ordering Husband to pay Wife for the replacement value of her engagement ring and a sapphire cocktail ring.

{¶14} R.C. 3105.171 (B) states, in relevant part:

In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section.

"Marital property" includes "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(i). "Marital property" does not include separate property. R.C. 3105.171(A)(3)(b). Separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). R.C. 3105.171(H) states: "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."

{¶15} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 19. "The burden to prove the separate identity of property can be met with documents or testimony, but 'merely claim[ing] that the property * * * constitutes * * * separate property does not make it so.'" *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 29, quoting *Eikenberry* at ¶ 27-28. "The proponent must demonstrate the amount of separate property traced."

*Kolar* at ¶ 29. *See Morris v. Morris*, 9th Dist. Summit No. 22778, 2006-Ohio-1560, ¶ 26; *see also Measor v. Measor*, 160 Ohio App.3d 60, 2005-Ohio-1417, ¶ 55 (11th Dist.) (finding funds not adequately traced when proponent failed to provide documentation of the exact amount or source of the funds).

{¶16} "Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard." *Kolar* at ¶ 30. When reviewing the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse." *Boreman v. Boreman*, 9th Dist. Wayne No. 01CA0034, 2002-Ohio-2320, ¶ 10.

**The Delray Property**

{¶17} Husband purchased the Delray property in 2005, approximately 3-years prior to the parties' marriage. The parties resided in the Delray property after they were married for a short period of time. Throughout the parties' marriage, Husband rented the Delray property to tenants. Marital money was used to pay the mortgage, property taxes, and home owner association fees. Prior to the parties' divorce, Husband moved into the Delray property and used marital money to make significant improvements to the property. Husband spent approximately $55,460.00 on materials for the improvements from funds in the parties' E*TRADE*1894 account.

{¶18} The trial court ordered an appraisal of the Delray property, which Husband did not immediately comply with due to his argument this was separate property. Frederick Smith, an

appraiser, performed both a retrospective appraisal of the property, as of the date of the parties' marriage on May 25, 2008, and a contemporary appraisal as of December 10, 2021. Mr. Smith also provided an updated appraisal, mid-trial, which was not admitted or considered. As of May 25, 2008, Mr. Smith determined the value of the Delray property was $215,000.00. Further, as of December 10, 2021, Mr. Smith determined the value of the Delray property was $370,000.00.

{¶19} In determining Husband's separate equity and the parties' marital equity in the Delray property, the trial court acknowledged it did not have a mortgage balance as of the date of the parties' marriage. The trial court determined, as of December 10, 2021, there was a mortgage balance of $126,726.40, and equity in the amount of $243,273.60 in the Delray property. Based upon the evidence before it, the trial court determined Husband had a 21.4% separate interest in the Delray property, and awarded him $52,130.06 in separate equity. The trial court also awarded each party $95,591.77 in marital equity.

{¶20} In *Ott v. Ott*, 9th Dist. Wayne No. 21AP0023, 2022-Ohio-2087, ¶ 14, this Court considered a similar issue as to whether the equity in the parties' home was marital or separate property. In determining the equity to be marital property, this Court explained:

> Overall, this Court simply concludes that Husband failed to meet his burden to demonstrate that the equity in the home was his separate property in light of the lack of equity at the time of the marriage, the lack of the information provided about the refinance during the marriage, the value of the home at the time of the refinance, and the balance of the mortgage at the time of the refinance.

{¶21} Here, similar to *Ott*, Husband failed to provide documentation of the mortgage amount at the time of the parties' marriage. Although Wife argued Husband should only receive 18% separate equity in the Delray property, the trial court determined Husband's separate equity to be 21.4%. Thus, based upon the evidence before it, which did not include documentation of the Delray property mortgage balance at the time of the parties' marriage, we cannot say the trial court

clearly lost its way and created a manifest miscarriage of justice in calculating Husband's separate equity in the Delray property at 21.4%.

**Allstate Settlement**

{¶22}  Husband also argues the trial court erred in determining Husband did not prove some or all of the Allstate settlement was compensation for personal injury damages and Husband's separate property.  Husband specifically argues the proceeds are separate property because the Allstate settlement compensated him for pain and suffering, emotional distress, and reputational harm.  The evidence presented at trial, however, demonstrates otherwise.

{¶23}  The Fifth Amended Complaint in the Allstate lawsuit included claims for fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, breach of contract, fraud in the inducement, and vicarious liability.  Husband also pleaded for punitive damages.  At the parties' divorce trial, Wife's expert witness, Jason Bogniard, a financial analyst and business evaluator, testified he reviewed the parties' tax returns.  Mr. Bogniard's review included Husband's company, The Asset Protection Group, Inc.'s, 2016 federal tax return.  The Asset Protection Group, Inc.'s  2016 federal tax return treated the Allstate settlement as a capital transaction for the sale of The Asset Protection Group, Inc.  Mr. Bogniard explained:

> Had there been any portion of this transaction that would have represented ordinary income or compensation for wages,  compensation for personal injury, any sort of other transaction other than the sale of the asset, it would have appeared in a totally different place on the parties' tax return and taxed at ordinary income tax rates. That didn't happen here.  Nowhere on the personal tax return for 2016 for the Pouloses was there any portion of this settlement or sale attributed to ordinary income.

Additionally, Husband's counsel in the Allstate lawsuit, Damien Prosser, testified he runs the business litigation group at Morgan & Morgan, and his practice is solely focused on complex commercial litigation.  Attorney Prosser stated he never handled a personal injury matter in his

professional career. Attorney Prosser also testified the lawsuit against Allstate was about "misrepresentations that were made to [Husband] in connection with his purchase of the insurance agency from the sellers, prior owners[,]" and he did not recall if any portion of Husband's settlement was for reputational harm.

**{¶24}** Further, although Husband argues the amount of the settlement included damages for reputational harm, a review of the settlement documents shows no delineation between damages for lost wages, harm to reputation and/or punitive damages. The trial court correctly indicated "there is simply a lump sum amount in the settlement." *See Buck v. Buck*, 6th Dist. Fulton No. F-17-012, 2018-Ohio-3704, ¶ 14 (the Sixth District Court of Appeals affirmed the trial court's determination that a settlement award for Husband's injury in a work-related accident was marital property where, among other things, the "settlement agreement contained no dollar amount for each individual type of claim that was resolved[.]"). *See also* R.C. 3105.171(A)(6)(a)(vi) (Separate property includes: "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]").

**{¶25}** Thus, the evidence in the record does not support Husband's contention that *any* part of the Allstate settlement was for personal injury. As such, we cannot say the trial court clearly lost its way and created a manifest miscarriage of justice in classifying the Allstate settlement as marital property.

**The Jewelry**

**{¶26}** Wife possesses a diamond engagement ring and sapphire cocktail ring, which were gifts to Wife from Husband and Husband's mother respectively. Both rings were given to Wife prior to the parties' marriage and the stones were previously owned by Husband's grandmother. Husband contends the rings are his separate property. In awarding the engagement ring to

Husband, the trial court stated, "based upon the equities and due to the sentimental value of the jewelry, the [c]ourt [finds] that Husband should be allocated the engagement ring." Further, as to both rings, the trial court stated:

> Clearly, Husband and Ms. Nicols [Husband's mother] gave the rings to Wife; however both intended that if the marriage ended Wife would return the rings. Therefore, the inter vivos gift of both rings was *conditioned* upon the parties staying married. *The Court finds that the sapphire cocktail ring and diamond engagement ring shall be returned to Husband and Husband shall pay Wife the replacement value of both rings.*

(Emphasis added.) Notably, the trial court does not specifically determine whether the rings are the parties' separate or marital property. Instead, the trial court characterized the rings as conditional gifts, but then indicated the engagement ring is awarded to Husband based upon sentiment and equity. Further, the trial court awarded Wife the monetary value of both rings. Based upon the conflicting nature of this award, we remand this matter to the trial court to determine in the first instance if the engagement ring and sapphire cocktail ring are the parties' marital or separate property, and whether Wife should receive a monetary award for the replacement value of the rings.

### ASSIGNMENT OF ERROR IV

**DUE TO STATUTORY PRESUMPTION THAT THE ALLSTATE SETTLEMENT CONSTITUTES HUSBAND'S SEPARATE PROPERTY, THE TRIAL COURT'S FINDING THAT HUSBAND COULD NOT TRACE THESE PROCEEDS INTO SEPARATE ASSETS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶27} In his fourth assignment of error, Husband argues the trial court erred in finding he could not trace the Allstate settlement as separate property because, pursuant to R.C. 3105.171(A)(6)(a)(vi), "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[,]" is separate

property. Based upon this Court's resolution of Husband's third assignment of error, however, Husband's fourth assignment of error is moot. *See* App.R. 12(A)(1)(c).

## ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ABUSED ITS DISCRETION BY NOT AWARDING HUSBAND SPOUSAL SUPPORT.**

## ASSIGNMENT OF ERROR VII

**THE TRIAL COURT ABUSED ITS DISCRETION BY NOT AWARDING HUSBAND ATTORNEY FEES.**

**{¶28}** In his sixth and seventh assignments of error, Husband argues the trial court abused its discretion in failing to award him spousal support and attorney fees.

**{¶29}** "Prior to considering appropriate and reasonable spousal support, a trial court must determine what constitutes marital property or separate property and then divide the marital property equitably between the spouses." *Yousef v. Iskander*, 9th Dist. Summit No. 29703, 2021-Ohio-3322, ¶ 11, quoting R.C. 3105.18(B); R.C. 3105.171.

**{¶30}** Further, attorney fees in connection with a divorce may be awarded under R.C. 3105.73(A), which provides:

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

"'Because a court addresses an award of attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation.'" *McGrew v. McGrew*, 9th Dist. Summit No. 28310, 2017-Ohio-7854, ¶ 23, quoting *Grosse v. Grosse*, 9th Dist. Summit No. 27159, 2014-Ohio-5642, ¶ 9.

**{¶31}** Here, because our resolution of the fifth assignment of error necessitates the trial court revisit its determination regarding the division of the parties' property, our consideration of the sixth and seventh assignments of error is rendered premature. *See Lee v. Lee*, 9th Dist. Lorain No. 17CA011235, 2019-Ohio-61, ¶ 23.

### III.

**{¶32}** Husband's first, second, and third assignments of error are overruled. Husband's fourth assignment of error is moot. Husband's fifth assignment of error is sustained. Husband's sixth and seventh assignments of error are premature. Wife's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Division of Domestic Relations, is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DENISE HOUSTON, Attorney at Law, for Appellant/Cross-Appellee.

RANDAL LOWRY and ADAM MORRIS, Attorneys at Law, for Appellee/Cross-Appellant.