[Cite as *Ott v. Ott*, 2022-Ohio-2087.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

RICHARD OTT

    Appellee

v.

CATHERINE OTT

    Appellant

C.A. No.    21AP0023

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2020 DR-B 000206

DECISION AND JOURNAL ENTRY

Dated: June 21, 2022

CARR, Judge.

**{¶1}** Defendant-Appellant Catherine Ott ("Wife") appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, and reverses in part.

I.

**{¶2}** Wife and Plaintiff-Appellee Richard Ott ("Husband") married on March 30, 2009. No children were born of the marriage, although Wife's grandson lived with the parties during the marriage. Husband filed a complaint for divorce June 24, 2020, and Wife filed a counterclaim and answer in July 2020.

**{¶3}** The matter proceeded to a two-day hearing before a magistrate, who then issued a decision. Both Husband and Wife filed objections to the decision. The trial court sustained one of Wife's objections and overruled the remaining objections. The trial court defined the parties' marriage as the period from March 30, 2009, through May 1, 2019, the date of separation. Of

importance to this appeal, the trial court determined that the marital home was Husband's separate property, that a homeowner's insurance disbursement was "related to the [marital residence]" and "should remain with the residence[,]" that Husband and Wife should each be awarded a vehicle, and that Wife was not entitled to spousal support. Wife has appealed, raising four assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT AWARDED RICHARD OTT THE RESIDENCE LOCATED AT 356 DALY ROAD IN WOOSTER, OHIO AS APPELLANT'S SEPARATE PROPERTY AS THE SAME IS CONTRARY TO LAW AND CONTRARY TO THE MANIFEST WEIGHT OF EVIDENCE AND NOT A FAIR AND EQUITABLE DETERMINATION OF THE ASSET.

{¶4} Wife argues in her first assignment of error that the trial court erred in classifying the marital home as Husband's separate property.

{¶5} "Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard." *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 30. When reviewing the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶6} R.C. 3105.171 governs the division of marital and separate property and provides relevant definitions concerning the same. It provides that, "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * *

* [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). "Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D). "Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property, within the otherwise commingled property." *Swick v. Swick*, 9th Dist. Wayne No. 20AP0009, 2020-Ohio-6884, ¶ 15, quoting *Salmon v. Salmon*, 9th Dist. Summit No. 22745, 2006-Ohio-1557, ¶ 9. The burden of proof in such situations is a preponderance of the evidence. *Kolar*, 2018-Ohio-2559, at ¶ 29.

> "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage and any income that is derived from the investment of those moneys during the marriage.

R.C. 3105.171(A)(3)(a).

{¶7} Marital property does not include separate property, R.C. 3105.171(A)(3)(b), which

is defined as:

All real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;

(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

R.C. 3105.171(A)(6)(a). "'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). "In the case of a marital residence, passive appreciation includes the increased equity in the home due to market conditions, as opposed to active appreciation resulting from investment or labor." *Salmon* at ¶ 10, citing *Ray v. Ray*, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, ¶ 6. "In a mixed situation, one who asserts that the appreciation of a premarital asset during the marriage is his or her separate property has the burden of proof on this issue by a preponderance of the evidence." *Salmon* at ¶ 10.

{¶8}    Here, Husband purchased the marital residence in 2003 for $140,000. The property is in his sole name and was refinanced solely in his name. There is no evidence in the record detailing the amount of any down payment. Husband and Wife appear to be in agreement that there was no equity in the residence at the time Wife moved in with Husband in 2005 or when the parties married on March 30, 2009. Husband testified that, at some point before Wife moved into the marital residence, he refinanced the mortgage and used the funds for lawn equipment. There was no evidence as to what the value of the home was at the time of the refinance or how much money was used for the lawn equipment. However, since the home was refinanced and the debt on the property was increased prior to the marriage, presumably immediately prior to the refinance there was some equity in the property.

{¶9}    The parties agreed during their testimony that at the time of the marriage, the mortgage was $104,318.00 and records demonstrate that it was $102,734.33 in December 2009. Thus, if there truly was no equity in the home at the time of the marriage, the value of the house

should have equaled the principal balance on the mortgage, i.e. $104,318.00. The home was again refinanced during the marriage. The value of the home at the time of the refinance during the marriage is also not in the record nor is the date of the refinance. While Husband seemed to assert that equity was not removed from the home during the marital refinance, Wife disagreed. Moreover, a mortgage statement confirms the principal balance on the mortgage was $118,612.38 as of July 2012, thereby reflecting an increase in debt as compared to the balance on the date of the marriage. Despite the trial court's statement to the contrary, there is no evidence as to what any funds from the refinance were used for. A February 2014 statement reflected a principal balance of $115,484.87 and a total debt of $116,014.18. As of August 2020, the principal balance was $109,000.88. There is also no dispute that occasionally mortgage payments were not timely paid. There has been no argument or demonstration that the mortgage payments made during the marriage were paid with separate funds. While Wife provided testimony that the mortgage was paid out of an account where only her paycheck was deposited, that does not mean that the funds were separate funds as the funds were earned during the marriage. *See Hoy v. Hoy*, 4th Dist. Vinton No. 19CA717, 2021-Ohio-2074, ¶ 15.

{¶10} Husband has argued that the marital home is his separate property as he purchased it prior to the marriage, the debt increased during the marriage, and there was no appreciation to the property as he bought it for $140,000 and the parties agreed it was worth $140,000 at the time of trial. Moreover, he points out that any passive appreciation acquired from separate property during the marriage would be separate property. *See* R.C. 3105.171(A)(6)(a)(iii).

{¶11} We do not dispute that Husband has a separate property interest in the marital property as he purchased it prior to the marriage. The property remains titled solely in his name and there is no evidence that Husband intended to gift it to Wife. Accordingly, this Court does not

find it against the manifest weight of the evidence to award the actual structure to Husband. However, we cannot say that Husband met his burden to establish a separate property interest in the equity in the marital home, aside from any funds he paid for the mortgage subsequent to May 1, 2019. While at first glance, it does appear that the parties did not decrease the mortgage balance during the marriage to create any equity, after a closer examination we cannot say that the same has been affirmatively demonstrated based upon the record before us.

{¶12} First, there was equity in the marital home at the time of the divorce. The parties agree the house was worth $140,000 at the time of the trial, and do not seem to oppose using that figure as the value as of May 1, 2019. The parties also agree that the mortgage on the property was $104,318.00 at the time of the marriage and that there was no equity at the time of the marriage, meaning the value of the home at that time was $104,318.00. Unfortunately, nothing in the record demonstrates when the value of the home increased to $140,000. However, at least some appreciation, presumably passive, occurred sometime before July 2012, assuming that the $118,612.38 principal balance in July 2012 evidenced increased debt from the marital refinance, as there would need to be some equity in the home in order for additional debt to be assumed.

{¶13} Further, while it first may appear the parties did not decrease the mortgage balance during the marriage given that it was $104,318.00 when the parties married and $109,000.88 in August 2020, the mortgage balance reached $118,612.38 in July 2012. Accordingly, the parties did decrease the mortgage balance during the marriage. *See Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 8. ("Any reduction in the amount of the first and second mortgages during the marriage by payment of marital funds would be marital property.") (Internal quotations and citation omitted.). Moreover, if by chance the house was valued at $140,000 in 2012, the remaining equity that accrued from 2012 until 2019 would be marital as it would be due

to paying down the mortgage. *See id*. Finally, we note that this is a truly unusual situation. Husband argues that the structure and the equity are his separate property despite there being no equity at the time of marriage. Husband has not pointed to any law that concludes that R.C. 3105.171(A)(6)(a)(iii) would apply when there was no equity at the start of the marriage.

{¶14} Overall, this Court simply concludes that Husband failed to meet his burden to demonstrate that the equity in the home was his separate property in light of the lack of equity at the time of the marriage, the lack of the information provided about the refinance during the marriage, the value of the home at the time of the refinance, and the balance of the mortgage at the time of the refinance. *See Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶ 36-38.

{¶15} Accordingly, while Wife has not demonstrated that the trial court erred in awarding Husband the structure of the house, the trial court did err in determining that Husband met his burden to demonstrate the equity was his separate property. The equity in the home, aside from funds Husband paid for the mortgage subsequent to May 1, 2019, is marital.

{¶16} Wife's first assignment of error is sustained to the extent discussed above.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT AWARDED THE HOMEOWNER INSURANCE DISBURSEMENT AS BEING RELATED TO THE DALY ROAD RESIDENCE AND THEREFORE FINDING IT TO BE RICHARD OTT'S SEPARATE PROPERTY AS THE SAME IS CONTRARY TO LAW AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT A FAIR AND EQUITABLE DETERMINATION OF THE ASSET.

{¶17} Wife argues in her second assignment of error that the trial court erred in awarding the insurance disbursement to Husband as his separate property.

{¶18} In December 2017, the parties suffered damage to the marital home due to a leaking hot water heater. The insurance company issued payment in an amount totaling $15,187.18.

Approximately $1,500.00 of that amount was paid to a contractor.  It is unclear from the record what became of the remaining funds.  There was evidence that was presented that payments to the insurance company were made out of a joint checking account and that the loss occurred during the marriage.

{¶19}  Without expressly labeling the insurance proceeds as separate property, the trial court concluded that the proceeds "related to the [marital residence]" and "should remain with the residence[.]"  The trial court then awarded any remaining funds to Husband.

{¶20}  We agree that the trial court erred.  The insurance was funded with martial property and, therefore, the proceeds from the insurance claim were also marital property.  *See Lanzilotta v. Lanzilotta*, 1st Dist. Hamilton Nos. C-120796, C-120835, 2013-Ohio-4050, ¶ 9.

{¶21}  Wife's second assignment of error is sustained.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT AWARDED THE SUBURBAN TO RICHARD OTT AND TO CATHERINE OTT AS THE ALLOCATION OF THE VEHICLES WAS CONTRARY TO LAW AND CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AS IT WAS NOT A FAIR AND EQUITABLE DISTRIBUTION OF THESE ASSETS. (SIC)

{¶22}  Wife argues in her third assignment of error that the trial court erred in its distribution of the parties' vehicles.

{¶23}  The trial court awarded a 1995 Ford Explorer, which was not operable, to Wife, and a 1994 Chevy Suburban, which was still drivable, to Husband.  It appears the trial court concluded the vehicles were marital property.  The 1994 Suburban had 167,000 miles on it.  Husband estimated it be valued at $100 and he paid $400 for it a few years prior to trial.  No value was stated for the 1995 Explorer.

{¶24} "A trial court enjoys broad discretion in fashioning an equitable division of marital property. Consequently, its judgment will not be disturbed absent an abuse of discretion." *Hunt v. Hunt*, 9th Dist. Loran No. 21CA011720, 2022-Ohio-412, ¶ 8.

{¶25} We cannot say that the trial court's determination was unreasonable. The trial court awarded the working vehicle to Husband, who had full-time employment, and the non-working vehicle to Wife, who was unemployed at the time of trial. Both vehicles were of similar age. While Wife maintained that she needed an operable vehicle to obtain employment, Wife was awarded a non-working vehicle that could be sold or scrapped in order to help fund another vehicle. In addition, we note that Wife was awarded a parcel of property that was valued at $2,760. Wife has not demonstrated that the trial court abused its discretion in the distribution of the vehicles.

{¶26} Wife's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED WHEN IT FAILED TO AWARD CATHERINE OTT SPOUSAL SUPPORT. SPECIFICALLY, THE TRIAL COURT ERRED IN DETERMINING THAT CATHERINE OTT WAS UNDEREMPLOYED, AND THAT RICHARD OTT SHOULD RECEIVE CREDIT FOR PAYING A MORTGAGE PAYMENT IN LIEU OF A DIRECT SPOUSAL SUPPORT PAYMENT FOR SIXTEEN MONTHS. THE TRIAL COURT FURTHER ERRED IN BASING ITS ORDER OF NO SPOUSAL SUPPORT ON EXPENSE THAT RICHARD OTT WAS NOT ACTUALLY PAYING. THE TRIAL COURT FAILED TO PROPERLY CONSIDER FACTORS OUTLINED IN R.C. 3105.171.

{¶27} Wife asserts in her fourth assignment of error that the trial court erred in failing to award her any spousal support.

{¶28} "[A]fter the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). Further, "[i]n determining whether spousal support is appropriate and reasonable, the court must consider, among other factors, [t]he relative assets and

liabilities of the parties * * *." (Internal quotations omitted.) *Fetzer v. Fetzer*, 9th Dist. Wayne No. 12CA0036, 2014-Ohio-747, ¶ 60, quoting *Braidy v. Braidy*, 9th Dist. Summit No. 26608, 2013-Ohio-5304, ¶ 16, quoting R.C. 3105.18(C)(1)(i). Accordingly, based upon our resolution of Wife's first and second assignments of error, her argument pertaining to spousal support is premature, and we decline to address it at this time. *See Fetzer* at ¶ 60.

III.

{¶29} Wife's first and second assignments of error are sustained. Her third assignment of error is overruled. Wife's fourth assignment of error is premature. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

12

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ROSANNE K. SHRINER, Attorney at Law, for Appellant.

CRAIG R. REYNOLDS, Attorney at Law, for Appellee.