[Cite as *I.R. v. D.R.*, 2023-Ohio-1427.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

I.R.

    Appellant

    v.

D.R.

    Appellee

C.A. No.      22AP0012

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2020 DR-A 000140

DECISION AND JOURNAL ENTRY

Dated: May 1, 2023

CARR, Judge.

{¶1} Plaintiff-Appellant, Isaac R. ("Father"), appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} Father and Defendant-Appellee, Denise R. ("Mother"), married in 2009. They have four children together, two of whom are adopted and two of whom are their biological children. The children were born in 2007, 2009, 2013, and 2016, respectively. After Father filed for divorce in 2020, both he and Mother sought temporary and permanent custody of the children.

{¶3} Father and Mother engaged in joint and individual counseling while married. Mother described an ongoing pattern of abuse and sexually aggressive behavior on the part of Father. Specifically, she reported he had a long-standing history of pressuring her or forcing her to engage in unwanted sexual activity, even when she was injured or ill. He also would force her to have sex in the middle of the night but would not recall his actions the following morning.

Father's nighttime behavior led to him being diagnosed with sexsomnia,[1] a condition that causes people to engage in sexual behaviors while asleep. According to Mother, Father always pressured her to abandon the safety plans they created to deal with his sexsomnia. When she would relent and return to their marital bed, Father would invariably assault her again during the night. Mother left the marital residence with the children before Father filed for divorce.

{¶4} The trial court awarded temporary custody of the children to Mother. The court also appointed a guardian ad litem and ordered the parties and the children to submit to a custody evaluation performed by a court-appointed clinical psychologist. Although the temporary orders afforded Father a mid-week visit and parenting time on weekends, the trial court refused to allow him to keep the children overnight. The guardian ad litem and custody evaluator ultimately agreed with that order, recommending Father's parenting time not include any overnight stays.

{¶5} A magistrate conducted the parties' final divorce hearing and issued a decision. Relevant to this appeal, the magistrate named Mother residential parent and legal custodian. The magistrate awarded Father parenting time that did not include any overnight stays. After the trial court adopted and entered judgment on the magistrate's decision, Father filed objections. Upon review, the trial court overruled his objections to the magistrate's decision.

{¶6} Father now appeals from the trial court's judgment and raises two assignments of error for review. To facilitate our analysis, this Court reorders his assignments of error.

---

[1] "Sexsomnia" is also spelled "sexomnia" in multiple places throughout the record. For the sake of consistency, this Court will employ the former spelling throughout this opinion.

II.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT'S FINDINGS OF FACT, WITH RESPECT TO ITS DECISION PROHIBITING APPELLANT FROM HAVING OVERNIGHT PARENTING TIME WITH THE MINOR CHILDREN, WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7} In his second assignment of error, Father argues several of the trial court's factual findings are against the manifest weight of the evidence. Upon review, this Court rejects his argument.

{¶8} This Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion. *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. While a trial court's ultimate decision regarding the allocation of parental rights and responsibilities "will not be reversed absent an abuse of discretion, this Court applies the manifest weight of the evidence standard to review the trial court's factual findings." *Herron v. Herron*, 9th Dist. Summit No. 29683, 2021-Ohio-2223, ¶ 24. In a manifest weight review, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "When weighing the evidence, this Court 'must always be mindful of the presumption in favor of the finder of fact.'" *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7, quoting *Eastley* at ¶ 21.

{¶9} The trial court found Father had been diagnosed with "Other Specified Personality Disorder" and exhibited traits consistent with a narcissistic and antisocial personality. While Father also had been diagnosed with sexsomnia, the court noted, the doctor who tendered that diagnosis had never spoken to Mother. As such, the sexsomnia diagnosis did not take into account information that Father also routinely made unwanted sexual advances toward Mother while he was awake. The trial court found the custody evaluator, Dr. Robin Tener, had set forth numerous concerns and inconsistencies in Father's sexsomnia diagnosis. Moreover, even if Father suffered from sexsomnia, the court found, that meant he had "no control or awareness of his aggressive sexual behavior." The court found the anti-anxiety medication Father had started taking was "not a treatment" for sexsomnia. It also found he was "unable to control his [sexsomnia] or stop it from occurring." The court indicated it had "grave concerns regarding the safety of the children on overnight visits" based on evidence Father had "no control over his sexually aggressive behavior, whether due to a diagnosis of [sexsomnia], or due to his lack of self-control, which he tries to [wave] off as mere 'persistence.'"

{¶10} Father argues four of the trial court's factual findings are against the manifest weight of the evidence. First, he challenges the court's finding that he had "no control over his sexually aggressive behavior, whether due to a diagnosis of [sexsomnia], or due to his lack of self-control, which he tries to [wave] off as mere 'persistence.'" Father argues there was no evidence his sexual behavior affected the children or his parenting style. He notes Mother never testified he had directed any inappropriate sexual behavior at the children. According to Father, the court's finding that he lacked control over his sexual behavior was reflective of a moral judgment on the part of the court rather than a conclusion drawn from the evidence.

{¶11} Second, and relatedly, Father challenges the court's finding that his sexsomnia diagnoses, if accepted, meant he had "no control or awareness of his aggressive sexual behavior." He argues that finding directly contravenes expert evidence he presented in the form of a letter and testimony from Dr. Robert Sibilia, the sleep medicine expert who diagnosed him. According to Father, that evidence showed he had taken extensive steps to control his sexsomnia, including starting medication, making lifestyle changes, and implementing preventative measures. Because the evidence showed he had succeeded in controlling his sexsomnia through treatment, Father argues, the trial court lost its way when it issued a finding to the contrary.

{¶12} Third, Father challenges the court's finding that his anti-anxiety medication was "not a treatment" for sexsomnia. He argues there was no evidence in the record to support that finding. In fact, Father avers, Dr. Sibilia specifically testified the medication he prescribed Father had been shown to benefit sexsomnia. Because Mother failed to present any evidence to refute that testimony, Father argues, the trial court's finding to the contrary is against the weight of the evidence.

{¶13} Finally, Father challenges the trial court's finding that the custody evaluator, Dr. Tener, set forth numerous concerns and inconsistencies in Father's sexsomnia diagnosis. According to Father, Dr. Tener failed to cite any evidence in support of her conclusions or explain how she was qualified to refute Dr. Sibilia's expert opinion. Because Dr. Tener did not testify, Father argues, he also was not able to challenge her conclusions on cross-examination. He argues the trial court erred when it assigned any evidentiary weight to Dr. Tener's report and relied on the report to justify its factual findings.

Findings Regarding Father's Lack of Control

{¶14} Because the first two factual findings Father challenges are interrelated, we will address them together. Both findings concern Father's inability to control himself. Whether due to sexsomnia or a general lack of self-control, the trial court found Father was unable to control his sexually aggressive behavior.

{¶15} Dr. Sibilia testified as an expert in sleep medicine. He met with Father six to seven times and diagnosed him with sexsomnia based on Father's self-reporting information he had learned from Mother. Dr. Sibilia defined sexsomnia as a condition wherein a person acts out in a sexual manner during their initial non-REM stage of sleep. Those sexual behaviors can range from verbal noises to having sexual intercourse with another person. Regardless of the type of sexual behavior that transpires, Dr. Sibilia testified, a component of sexsomnia is "an unawareness of the event." Because they are asleep, sexsomniacs "have almost total amnesia" regarding their actions.

{¶16} Dr. Sibilia testified sexsomnia can be mitigated by reducing certain triggers such as anxiety, alcohol, and a lack of healthy sleeping habits. He described the treatment plan he crafted for Father, which included Father seeing a therapist, taking an anti-anxiety medication, creating a fitness and sleep routine, and sleeping alone. He testified they had been able to confirm the efficacy of Father's treatment by placing an alarm on his bedroom door and having him wear an actigraphy watch to bed to monitor his heart rate. Neither had shown Father had experienced any sexsomnia episodes since beginning his treatment plan. Further, Dr. Sibilia testified Father had no history of sleepwalking. It was Dr. Sibilia's opinion Father posed no danger to his children if he continued to follow his treatment plan. When asked about co-sleeping, however, Dr. Sibilia testified: "co-sleeping with roommates, children, friends, I don't recommend that at all." He recommended the children sleep on a different floor if they spent the night in a house with Father.

{¶17} During his testimony, Father confirmed he had no memory of any sexsomnia episodes. He conceded that he suffered from that condition and that Mother first alerted him to his nighttime transgressions in 2013. The court evaluator, Dr. Tener, reported:

> [Father] claimed that he had no awareness of the fact that he was initiating sexual involvement with [Mother] during the nighttime hours, because he was diagnosed with Sexsomnia. He indicated that he *was helpless to behave differently* because the unwanted sexual activity that [Mother] complained about occurred when he was deeply asleep. Thus, [Father] emphasized *that he had no control* over the sexual behavior that he demonstrated while he was asleep * * *.

(Emphasis added.) Father also admitted there were times he had knowingly pushed Mother to engage in sexual intercourse during the marriage, even when she was sick with a fever or suffering from back pain. According to Father, Mother eventually consented each time after "some persistent" asking on his part.

{¶18} When Mother testified, she described a pattern of constant sexual aggression on the part of Father. She indicated she was a virgin when the parties married and, even before their marriage, Father pressured her to engage in sexual activity, put his hands in her clothes, and grabbed her private areas. On their honeymoon, Mother recalled, she found intercourse painful and wanted to stop, but Father insisted she had to have sex with him as many times as he wanted. She testified Father began engaging in forcible sexual intercourse with her during the night when their oldest biological daughter was about six months old. When she told Father what was happening, Mother stated, he found the situation humorous, laughed at her, and said, "this is so funny, I just love you so much day and night * * *." She testified Father would not see a counselor for several years after the sexsomnia episodes began. Mother did not believe Father's sexsomnia diagnosis was entirely accurate as his aggressive nighttime behavior was "pretty consistent" with his daytime behavior. It was her impression Father simply lacked sexual boundaries and was not concerned if he hurt others.

{¶19} To the extent counselors tried to create safety plans for her and Father during their marriage, Mother testified, Father would only abide by those plans for a short while. She described how she would sleep apart from Father to feel safe, but he would constantly pressure her to return to their bed and become more aggressive with the children until she relented. Mother testified Father had "repeatedly broken promises" and had "lied to [her] about every safety plan" they crafted. Regarding the children, Mother also described how Father had violated an agreement they had reached about his not sharing a bed with the children. Mother testified she once walked in on Father and their young daughter sleeping together in bed after Father had promised not to do so. While Father acknowledged their daughter had climbed into his bed on that one occasion, he denied falling asleep. He testified he allowed their daughter into his bed early one morning while he remained awake because he did not want her waking the household at that hour.

{¶20} Having reviewed the record, we cannot conclude this is the exceptional case where the evidence weighs heavily against the trial court's findings that Father was unable to control his aggressive sexual behavior. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20. While Father took steps to mitigate his sexsomnia, he acknowledged he had a complete lack of control over his actions during a sexsomnia episode. There was evidence he repeatedly forced Mother to engage in sexual intercourse in his sleep and had no memory of doing so. Dr. Sibilia felt Father would not pose a risk to the children *if* he continued to follow his treatment plan. Nevertheless, Dr. Sibilia still recommended the children sleep on a different floor and advised against Father co-sleeping with anyone unless it was some future consenting partner. The trial court heard Mother testify that Father routinely pressured her to disregard any safety plans they created and broke an agreement not to allow their daughter into his bed. While Father presented some conflicting testimony, the trier of fact was in the best position to judge the credibility of the witnesses. *See In*

*re T.K.*, 2017-Ohio-9135, at ¶ 7, quoting *Eastley* at ¶ 21 (noting the presumption in favor of the finder of fact in manifest weight challenges). Father has not shown the trial court lost its way and created a manifest miscarriage of justice when it determined he was unable to control his aggressive sexual behavior. Thus, we reject his argument to the contrary.

Finding Regarding the Efficacy of Anti-Anxiety Medication

**{¶21}** Father's next challenge concerns the trial court's finding that his anti-anxiety medication was "not a treatment" for sexsomnia. Dr. Sibilia testified he had prescribed Father a medication "that has been reported to benefit [] sexsomnia." He did not expound upon that statement. Father later testified he was taking an anti-anxiety medication for which "studies [had been] done to show the efficacy of treatment * * *." He listed his medication as an example of a lifestyle change he had made to reduce the risk of a sexsomnia episode. He testified anxiety can be a trigger for sexsomnia, so managing his anxiety was a part of his treatment.

**{¶22}** According to Father, there is no evidence in the record to support the trial court's finding that his anti-anxiety medication was "not a treatment" for sexsomnia. In fact, Father argues, the trial court's finding directly contravenes Dr. Sibilia's expert testimony. Yet, the record reflects Dr. Sibilia referred Father to another doctor for a second opinion. That second doctor's name was Dr. Kingman Strohl. The court evaluator, Dr. Tener, outlined and quoted portions of a clinical summary Dr. Strohl completed in November 2020 after meeting with Father. In his clinical summary, Dr. Strohl acknowledged Father was taking an anti-anxiety medication. Dr. Strohl wrote: "Unfortunately, literature has no consensus as to an effective medication [for sexsomnia]." Moreover, Dr. Tener wrote in her evaluation report: "Per reports provided by both [Dr. Sibilia and Dr. Strohl], there is no treatment available that guarantees [sexsomnia] has been

cured/substantially alleviated." Dr. Tener also wrote: "The anti[-]anxiety medication that [Father] is prescribed is not considered to be a treatment for Sexsomnia, per the expert he consulted."

**{¶23}** The record belies Father's argument that the trial court's finding about his anti-anxiety medication lacks evidentiary support. Dr. Strohl included statements to that effect in his clinical summary, and Dr. Tener cited those statements in her clinical evaluation report. Father has not explained how the trier of fact lost its way by relying on information provided by Dr. Strohl, as reported by Dr. Tener. This Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, \*8 (May 6, 1998). Upon review, Father has not shown the trial court lost its way and created a manifest miscarriage of justice when it found his anti-anxiety medication was "not a treatment" for sexsomnia. Thus, we reject his argument to the contrary.

Finding Regarding Dr. Tener's Report

**{¶24}** Father's last challenge concerns the trial court's finding that "[t]he report of Dr. Tener sets forth numerous concerns and inconsistencies in the sexsomnia diagnosis." Father does not dispute that Dr. Tener's report does, in fact, set forth concerns and perceived inconsistencies in his diagnosis. His argument is that the trial court erred when it assigned weight to her report because she did not cite evidence to support her conclusions, she did not explain how she was qualified to comment on his diagnosis, and she was not subject to cross-examination.

**{¶25}** Assuming without deciding that Father's argument presents us with a proper challenge to the trial court's factual finding rather than its ultimate decision to rely on Dr. Tener's report in allocating parental rights and responsibilities, a review of the record reveals his argument lacks merit. Dr. Tener was a clinical psychologist, and the court appointed her to complete a custody evaluation. The report she submitted spanned over 100 pages and offered an in-depth

evaluation based on interviews and assessments she conducted with Mother, Father, and the children; joint sessions with Mother and the children; joint sessions with Father and the children; the results of psychological tests she performed on Mother and Father; a review of therapy records from each of the counselors and therapists Mother and Father had seen; and a review of any medical records or clinical summaries related to Father's sexsomnia diagnosis and treatment. Dr. Tener offered criticisms of Father's diagnosis based on her review of the foregoing items. She described, in detail, the instances of sexual abuse Mother alleged, the behaviors Mother saw Father exhibit, and Mother's suspicions Father was not always asleep when he forced her to engage in sexual activity during the night. She also described Father's tendency to minimize his behavior, lack empathy, and prioritize his own needs above all others. While acknowledging she was not a sleep specialist, Dr. Tener noted Father's diagnosis was based strictly on self-reporting. She emphasized that neither of the experts who had met with Father had spoken to Mother, and it appeared Father had minimized both the frequency and intensity of the incidents that had occurred when he self-reported. Further, Dr. Tener wrote, "in both medical consultations, there was no discussion of the fact that [Father] demonstrated difficulty managing his sexual impulses and complying with physical boundaries *when he was fully awake and conscious*." (Emphasis sic.)

{¶26} Apart from explaining why she was critical of Father's sexsomnia diagnosis, Dr. Tener also explained the concerns she had about his sexsomnia, if that diagnosis applied. She noted, per the reports of Father's own experts, that a reemergence of sexsomnia cannot be predicted and there is no definitive cure for the condition. She questioned how Father could be effectively monitored in a household with children when effective monitoring "is dependent on the presence of another person who can provide information" while the subject is asleep. Further, Dr. Tener questioned Father's recognition of the seriousness of his diagnosis. She emphasized that he had

allowed his young daughter to share his bed at a time when he knew Mother was sleeping elsewhere as a direct result of his sexsomnia.

**{¶27}** During Dr. Sibilia's testimony, he acknowledged his diagnosis was based strictly on Father's self-reporting. He recalled recommending to Father at one point "that it would [have been] nice" to speak with Mother but said "it didn't seem like that was going to be possible at the time * * *." Dr. Sibilia never spoke directly with Mother, the guardian ad litem, or Dr. Tener. He also never spoke with Father's counselor. Dr. Sibilia acknowledged his diagnosis of sexsomnia could change based on the accuracy of the information he received.

**{¶28}** Upon review, we cannot conclude this is the exceptional case where the evidence weighs heavily against the trial court's finding that Dr. Tener's report "set[] forth numerous concerns and inconsistencies in [Father's] sexsomnia diagnosis." *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20. Dr. Tener outlined, in detail, all the information she gathered and the sources she consulted in forming her opinions. While fully acknowledging she was not a sleep expert, she explained the basis for the inconsistencies she perceived in Father's diagnosis and the concerns she had related to that diagnosis. Father has not shown the trial court lost its way when it found her report identified concerns and inconsistencies in his diagnosis. Thus, we reject his argument that the court's finding is against the manifest weight of the evidence. Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION, PROHIBITING APPELLANT FROM HAVING OVERNIGHT PARENTING TIME WITH THE MINOR CHILDREN, WAS AN ABUSE OF DISCRETION.

{¶29} In his first assignment of error, Father argues the trial court abused its discretion when it refused to award him overnight parenting time in allocating the parties' parental rights and responsibilities. We disagree.

{¶30} "[T]rial courts enjoy broad discretion in both the allocation of parental rights and responsibilities and visitation determinations." *Michael v. Michael*, 9th Dist. Wayne No. 20AP0010, 2021-Ohio-992, ¶ 33. This Court, therefore, reviews those decisions for an abuse of discretion. *Id.* at ¶ 32-33. *See also Tabatabai*, 2009-Ohio-3139, at ¶ 18 (actions on magistrate's decision reviewed with reference to nature of the underlying matter). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶31} "The allocation of parental rights and responsibilities, i.e. custody, is governed by R.C. 3109.04; parenting time or visitation is governed by R.C. 3109.051." *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 13. "When a trial court determines parenting time under R.C. 3109.051, it must do so consistent with the best interests of the children involved with consideration of the factors mentioned in R.C. 3109.051(D)." *Pirkel v. Pirkel*, 9th Dist. Lorain No. 13CA010436, 2014-Ohio-4327, ¶ 9. "Many of the factors listed in R.C. 3109.051(D) mirror the best interest factors contained in R.C. 3109.04(F) * * *." *Michael* at ¶ 28. Relevant to this appeal, R.C. 3109.051(D) directs courts to consider: (1) the prior interaction and interrelationships of the children with their parents, siblings, and other family members; (2) the geographical location of each parent; (3) each parent's and child's schedule; (4) the age of the children; (5) the children's adjustment to home, school, and community; (6) the health and safety of the children; (7) the

mental and physical health of all parties; (8) each parent's willingness to facilitate the other's parenting time rights; and (9) any other factor in the children's best interest. R.C. 3019.051(D)(1)-(5), (7), (9)-(10), (16). "[T]o further a child's best interests, the court has the discretion to limit or restrict visitation rights, including 'the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.'" *Stahl v. Stahl*, 9th Dist. Summit No. 27876, 2017-Ohio-4170, ¶ 15, quoting *Marrero v. Marrero*, 9th Dist. Lorain No. 02CA008057, 2002-Ohio-4862, ¶ 9.

{¶32} Father argues the trial court abused its discretion when it denied him overnight parenting time based on his sexsomnia diagnosis. Once again, he argues there was no evidence he lacked control over his aggressive sexual behavior such that it could impact the children. He notes there were never any allegations he acted inappropriately toward the children or engaged in acts of sexsomnia with anyone other than Mother. Further, Father argues, the evidence showed he had successfully treated his sexsomnia with a combination of medication and lifestyle changes. Father points to Dr. Sibilia's report wherein he opined that Father was not a risk to the children. Father argues it was unreasonable for the trial court to disregard Dr. Sibilia's expert opinion given that Mother failed to present any contrary medical evidence. According to Father, the trial court's decision not to award him overnight parenting time was a product of its bias against him rather than a decision reflective of the best interest of the children. He claims the court ignored evidence Mother had abused the children by using physical punishments and emotional maltreatment. Further, he claims the court failed to consider alternative sleeping arrangements he proposed, such as having the children sleep in a home with their paternal grandparents during his parenting time.

Father argues the trial court abused its discretion when it issued a decision that was not in the children's best interest.

{¶33} Initially, we note that Father's brief conflates the concepts of custody and parenting time. His captioned assignment of error only challenges one aspect of the trial court's parenting time order (i.e., that he not be afforded overnight visitation). In the body of his brief, Father likewise focuses on that aspect of the trial court's order, arguing it constituted an unreasonable limitation on his parenting time. Father has not cited R.C. 3109.051, however, or outlined the best interest factors contained therein. Instead, he cites the best interest factors outlined in R.C. 3109.04, which applies when a trial court allocates custody. *See Loewen* at ¶ 13. As previously noted, many of the best interest factors contained in R.C. 3109.04(F) and 3109.051(D) mirror one another, *Michael* at ¶ 28, but only R.C. 3109.051 governs parenting time determinations. *See Loewen* at ¶ 13. The record reflects the trial court conducted two separate analyses in its order; one addressed to its custody determination, and one addressed to its parenting time determination. Father has failed to differentiate between the two or present this Court with an argument specifically addressed to the factors contained in R.C. 3109.51(D).

{¶34} This Court declines to engage in an exhaustive review of the best interest factors outlined in R.C. 3109.51(D) when Father has not done so. *See Loewen*, 2018-Ohio-73, at ¶ 13. The record reflects the trial court reviewed each of those factors to the extent it found them applicable. In refusing to award Father any overnight parenting time, the court focused its analysis on the health and safety of the children and the mental and physical health of all parties. *See* R.C. 3109.051(D)(7), (9). The court noted it had "grave concerns" about awarding Father overnight parenting time, in his home or any other, based on his inability to control his sexsomnia/sexually aggressive behavior. The court also cited the analysis it had conducted under R.C. 3109.04(F),

wherein it discussed Father's diagnosis in greater detail. In that analysis, the court found Father's sexsomnia diagnosis suffered from inconsistencies, as cited by Dr. Tener, and did not account for the abusive daytime behavior Mother had described. Even accepting his diagnosis as accurate, however, the trial court emphasized the potential danger to the children given Father's inability to control his behavior while asleep and evidence he previously had allowed his young daughter to sleep in his bed. The court noted Father had been diagnosed with a personality disorder and bore traits consistent with narcissistic personality disorder and antisocial personality disorder. It also noted he continually demonstrated an unwillingness to take responsibility for his actions and "[waved] off" any suggestion that he lacked self-control. Based on the foregoing concerns, the trial court deemed it in the children's best interest not to have any overnight visitations with Father. We cannot conclude the trial court went so far as to abuse its discretion in imposing that restriction on Father's parenting time. *See Stahl*, 2017-Ohio-4170, at ¶ 15, quoting *Marrero*, 2002-Ohio-4862, at ¶ 9.

{¶35} Father's brief also includes a statement that the trial court erred by awarding custody to Mother. Yet, that issue falls outside the scope of his captioned assignment of error, which only challenges the trial court's parenting time restriction. *See Schutte v. DiCello*, 9th Dist. Summit No. 28807, 2018-Ohio-5118, ¶ 15. Moreover, it does not appear from the record that Father preserved a custody challenge for review. In his objections to the magistrate's decision, Father objected to the parenting time order under R.C. 3109.051, the allocation of certain tax exemptions to Mother, the award of certain real property to Father, the accuracy of certain factual findings and legal conclusions related to his sexsomnia diagnosis, the finding that Mother was more likely to facilitate visitation, and the decision to admit Dr. Tener's report without her taking the stand and being subject to cross-examination. He did not object to the magistrate's ultimate

legal conclusion that it was in the children's best interest to award custody to Mother. Nor has he argued plain error on appeal. *See* Civ.R. 53(D)(3)(b)(iv) (lack of objection to magistrate's decision forfeits all but plain error). This Court will not construct a plain error argument on his behalf. *See O'Hara v. Ephraim*, 9th Dist. Summit No. 28467, 2018-Ohio-567, ¶ 13. Because Father's additional custody argument falls outside the scope of his assignment of error and, in any event, was not preserved by way of objection, this Court declines to address it. Father's first assignment of error is overruled.

### III.

{¶36} Father's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

18

Costs taxed to Appellant.

_____

DONNA J. CARR
FOR THE COURT

SUTTON, P. J.
STEVENSON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

SUSAN J. LAX, Attorney at Law, for Appellant.

NORMAN R. "BING" MILLER, Attorney at Law, for Appellee.