[Cite as *Shields v. Shields*, 2024-Ohio-5979.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

CHRISTOPHER SHIELDS

    Appellee

    v.

HEATHER SHIELDS

    Appellant

C.A. No.     23AP0014

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2021 DR-A 0227

DECISION AND JOURNAL ENTRY

Dated: December 23, 2024

CARR, Judge.

{¶1} Defendant-Appellant Heather Shields ("Wife") appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms in part, reverses in part, and remands the matter for proceedings consistent with this decision.

I.

{¶2} Wife and Plaintiff-Appellee Christopher Shields ("Husband") married on October 28, 2011, in West Virginia. One child was born of the marriage, R.S., in August 2013.

{¶3} Shortly before the parties married, Husband was seriously and permanently injured when he was hit by a truck alongside a highway. Husband's father was also injured in the accident. During the marriage, the parties filed a lawsuit related to the accident. Ultimately, the matter was settled. Wife settled her claims for a few hundred dollars and Husband settled his for several million dollars. Of the money Husband received, almost $1,500,000 was used to purchase a structured settlement. The remainder was placed in a Wells Fargo account in Husband's name.

{¶4}    Over the course of the marriage, the parties relied almost exclusively on funds from the settlement and an inheritance Husband received to fund their daily lives and purchases. This included the purchase of two homes and multiple vehicles.

{¶5}    In July 2021, Husband filed a complaint for divorce; Wife filed a counterclaim for divorce in September 2021. Both parties submitted proposed shared parenting plans. A guardian ad litem was appointed. The matter proceeded to a hearing in December 2022. The magistrate issued a decision in January 2023, and the trial court entered judgment accordingly the same day. Inter alia, Husband's settlement funds and the purchases made with the settlement funds were determined to be his separate property and Husband's shared parenting plan, as amended at trial, was adopted. Wife filed objections to the magistrate's decision, which were ultimately overruled by the trial court.

{¶6}    Wife has appealed, raising ten assignments of error for our review. To facilitate our analysis, some of them will be addressed together.

II.

## ASSIGNMENT OF ERROR I

THE COURT ERRED BY FINDING THAT HEATHER FAILED TO MAKE CHILD SUPPORT PAYMENTS, WITHOUT NOTING THIS WAS DUE TO HEATHER BREAKING HER TAILBONE AND BEING OFF OF WORK FOR SEVERAL WEEKS IS AN ABUSE OF DISCRETION. [SIC]

## ASSIGNMENT OF ERROR II

THE COURT ERRED BY FINDING THAT HEATHER ONLY TOOK THE CHILD TO SCHOOL ONCE DURING THE PENDENCY OF THIS ACTION, WITHOUT REGARD TO THE TEMPORARY ORDERS AND CHRISTOPHER'S REFUSAL TO ALLOW HEATHER TO TAKE THE CHILD TO SCHOOL MORE OFTEN IS AN ABUSE OF DISCRETION. [SIC]

**ASSIGNMENT OF ERROR III**

THE COURT ERRED BY FINDING THAT CHRISTOPHER'S PROPOSED SHARED PARENTING PLAN, WITH THE AMENDMENT, WAS IN THE CHILD'S BEST INTEREST IS AN ABUSE OF DISCRETION. [SIC]

{¶7} Wife's first three assignments of error all relate to the shared parenting plan adopted by the trial court, and, thus, will be addressed together.

{¶8} Wife argues in her third assignment of error that the trial court erred in concluding that Husband's shared parenting plan was in the best interest of R.S. Wife argues in her first assignment of error that the trial court failed to consider Wife's reason for failing to be current in her child support obligation. Wife argues in her second assignment of error that the trial court failed to consider why she only took the child to school once. Essentially, it appears that Wife believes that if the trial court had considered the reasons behind Wife's actions with respect to the issues in the first two assignments of error, Wife's shared parenting plan would have been adopted.

{¶9} "This Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion. In so doing, we consider the trial court's action with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *I.R. v. D.R.*, 9th Dist. Wayne No. 22AP0012, 2023-Ohio-1427, ¶ 8. "[A] trial court's ultimate decision regarding the allocation of parental rights and responsibilities will not be reversed absent an abuse of discretion[.]" (Internal quotations and citations omitted.) *Id.*

{¶10} This Court has noted that:

If proposed shared parenting plans are received from the parents, the procedure which the court must follow is set forth at R.C. 3109.04(D)(1)(a). A court may determine that one of the submitted plans is in the best interest of the children and adopt that plan verbatim. *Id.* Barring adoption of one of the submitted plans, however, a court may only make suggestions for modification of the plans to the parties. *Id.* If the parties do not make appropriate changes or if the court is not satisfied with the changes that are resubmitted following the suggestions for modification, then the court may deny the request for shared parenting of the

children. *Id.* The statute does not give the court authority to create its own shared-parenting plan. *McClain v. McClain*, 87 Ohio App.3d 856, 857 (9th Dist.1993). A satisfactory plan must be filed with the court for adoption; otherwise, the court will not adopt any plan. R.C. 3109.04(D)(1)(b).

*Arroyo v. Walkingstick*, 9th Dist. Lorain Nos. 22CA0111832, 22CA011897, 2023-Ohio -4077, ¶ 25.

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

{¶11} As noted above, both Husband and Wife submitted proposed shared parenting plans. Husband's proposed shared parenting plan, named Husband the residential parent for school purposes and provided Wife with alternating weekends and one midweek period of parenting time. Wife's proposed shared parenting plan provided that she would be the residential parent for school purposes and that R.S. would alternate weeks with the parties. In addition, the non-possessory parent would receive a midweek session of parenting time.

{¶12} The guardian ad litem also recommended shared parenting for the parties, noting that both parties believed that they could cooperate and make decisions together in R.S.'s best

interests. She recommended that Husband be named the residential parent for school purposes and that parenting time essentially be what Husband proposed; however, the guardian ad litem believed that the alternating weekend visits should extend until Monday morning, with Wife taking R.S. to school and that Wife should have two midweek sessions of parenting time. At trial, Husband expressed concern about having the visit extend into Monday morning as it might alter R.S.'s schedule that she had grown accustomed to. Thus, Husband did not add that feature to his proposed shared parenting plan. However, Husband did agree with adding an additional midweek parenting time session for Wife into his shared parenting plan. Wife expressed agreement with the guardian ad litem's recommendations, including the parenting time recommendations. Wife indicated that she "just want[ed] more time with R[.S.]" She stated that she believed that Sunday overnights could work because she could adjust her work schedule. Wife also testified that she only had R.S. once for Sunday overnight because that was all that Husband would allow.

{¶13} At the time of the trial, R.S. spent every other weekend with Wife and had one midweek visit with Wife. Husband believed that that schedule was working well for R.S. but also understood the need for R.S. to have more time with Wife and so agreed with adding an additional midweek session of parenting time into his shared parenting plan as discussed above. The record does support that R.S. was doing well.

{¶14} The guardian ad litem also expressed concern with respect to the level of drama at Wife's home. Wife lived with her adult daughter from another marriage, her adult daughter's two minor children, and an adult that Wife referred to as an adopted child. The house that Wife lived in only contained three bedrooms. Wife had a bedroom, R.S. and Wife's daughter's daughter shared a bedroom, and Wife's daughter's son occupied the third bedroom. Wife's daughter stayed in an enclosed porch and Wife's so-called adopted son stayed in the garage. The guardian ad litem

noted in her report that she was concerned about the number of police reports associated with the property and individuals that live in the house or regularly visit. When R.S. stays with Husband, R.S. has her own bedroom. There she lives with Husband, Husband's girlfriend, and Husband's girlfriend's teenage son. Wife testified that the guardian ad litem's concerns about Wife's home were valid but believed that things had improved since the report was written.

{¶15} There was evidence presented that Wife was over $1100 behind in her child support payments. Wife noted that there was a time she was injured and off from work and not getting paid for six weeks and thus the payments would not have been deducted during that time; nonetheless she could not explain how that sum was due and owing given the time period she was off and the amount of the payments that were due.

{¶16} Overall, after reviewing the entire record, we cannot say that Wife has demonstrated that the trial court abused its discretion in concluding it was in the child's best interest to adopt Husband's shared parenting plan. It is true that many of the statutory factors favored neither Husband nor Wife; however, we cannot say that Wife has demonstrated that (1) the trial court failed to consider the reasons why Wife was behind in her child support payments or the reasons why she only took the child to school once; or that (2) those two issues would be determinative with respect to the best interest analysis even if Wife's assumptions are true. *See* Civ.R. 61.

{¶17} R.S. was by all accounts doing well at the time of trial. R.S. had adjusted well to her schedule, which included alternating weekends at Wife's home and one midweek parenting time session with Wife. The shared parenting plan proposed by Husband largely maintained that schedule while affording Wife an additional midweek parenting time session. On the other hand, Wife's shared parenting plan would be a much bigger change to R.S.'s schedule. Moreover, the

guardian ad litem's recommendation, which is also a factor to be considered, R.C. 3109.04(F)(2)(e), was very similar to Husband's shared parenting plan. We note that even Wife expressed agreement at trial with the guardian ad litem's parenting time recommendation. The guardian ad litem also expressed concerns about drama in Wife's household related to disturbances and police visits. Given the foregoing, we cannot say that Wife has demonstrated an abuse of discretion on the part of the trial court as to these issues.

{¶18} Wife's first three assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

THE COURT ERRED BY FINDING THAT HEATHER SHOULD BE DESIGNATED AS THE CHILD SUPPORT OBLIGOR IS AN ABUSE OF DISCRETION. [SIC]

### ASSIGNMENT OF ERROR V

THE COURT ERRED BY THE DETERMINATION OF CHRISTOPHER'S INCOME FOR CHILD SUPPORT PURPOSES IS AN ABUSE OF DISCRETION. [SIC]

{¶19} Wife argues in her fourth assignment of error that the trial court erred in determining she should be the child support obligor. Wife asserts in her fifth assignment of error that the trial court erred in calculating Husband's income for child support purposes.

{¶20} Here, Wife was named the obligor but the trial court deviated the child support award to zero. Accordingly, it is difficult to understand how Wife has been prejudiced by being named the obligor under these circumstances, and Wife has not developed any argument articulating how she has been prejudiced. *See* Civ.R. 61. Wife's fourth assignment of error is overruled on that basis.

{¶21} Wife argues in her fifth assignment of error that the trial court erred in calculating Husband's income for child support purposes as it is unclear how the trial court calculated his income.

{¶22} The worksheet lists that Husband's annual gross income is $17,016, a number which Husband testified to at trial. It then lists other income or potential income as $81,516, a number Husband also testified to at trial. That amount represents a combined total of the amount Husband receives each year from his structured settlement and approximately 1/5 of his most recent lump payment from that settlement, which he currently receives every five years. Thus, the figure is generally supported by the record. Irrespective, it is difficult to say that any error in the computation is anything other than harmless given that the trial court deviated the child support award to zero, and there is no reason to suspect that the trial court would do anything differently if the trial court was required to alter the number to correct an error. *See Kuper v. Halback*, 10th Dist. Franklin No. 09AP-899, 2010-Ohio-3020, ¶ 70.

{¶23} Wife's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE COURT ERRED BY SHIFTING THE BURDEN TO HEATHER TO PROVE WHAT PART OF CHRISTOPHERS' PERSONAL INJURY LAWSUIT SETTLEMENT FUNDS WERE FOR LOST WAGES AND THEREFORE ARE SEPARATE PROPERTY, RATHER THAN HAVING CHRISTOPHER PROVE THE LOST WAGES PORTION OF THE SETTLEMENT FUNDS AND THEN FINDING THAT ALL OF CHRISTOPHER'S SETTLEMENT FUNDS WERE TOTALLY HIS SEPARATE PROPERTY, RATHER THAN MARITAL PROPERTY IS AN ABUSE OF DISCRETION. [SIC]

### ASSIGNMENT OF ERROR VII

THE COURT ERRED BY FINDING THAT THE TWO HOMES THE PARTIES PURCHASED DURING THEIR MARRIAGE ARE NOT MARITAL PROPERTY IS AN ABUSE OF DISCRETION. [SIC]

**{¶24}** Wife argues in her sixth assignment of error that the trial court erred in its consideration and characterization of the proceeds Husband received from the settlement of his personal injury lawsuit. Wife argues in her seventh assignment of error that the trial court erred in concluding that the two homes purchased during the marriage were Husband's separate property.

**{¶25}** R.C. 3105.171 governs the division of marital and separate property and provides relevant definitions concerning the same. It provides that, "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). "Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse." R.C. 3105.171(D).

**{¶26}** "Because the determination of whether property is marital or separate is a fact-based determination, we review a trial court's decision under a manifest-weight-of-the-evidence standard." *Ott v. Ott,* 9th Dist. Wayne No. 21AP0023, 2022-Ohio-2087, ¶ 5, quoting *Kolar v. Kolar*, 9th Dist. Summit No. 28510, 2018-Ohio-2559, ¶ 30. "When reviewing the manifest weight of the evidence, the appellate court 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way * * *.'" *Ott* at ¶ 5, quoting *Eastley v. Volkman*, 132 Ohio St.3d

328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶27} R.C. 3105.171(A)(3)(a) defines marital property as:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent [described in the statute.]

{¶28} Marital property does not include separate property. R.C. 3105.171(A)(3)(b). Separate property includes "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]" R.C. 3105.171(A)(6)(a)(vi).

{¶29} "If the parties contest whether an asset is marital or separate property, the asset is presumed to be marital property unless it is proven otherwise. The party seeking to have the asset declared separate property has the burden of proving that the asset is separate property." (Internal quotations and citations omitted.) *Baughman v. Baughman*, 9th Dist. Summit No. 29870, 2021-Ohio-2019, ¶ 4.

{¶30} "Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). "The commingling of separate property with other property of any type does not destroy the identity of the separate

property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "The spouse seeking to identify, and protect, his or her own separate property bears the burden of tracing the existence of the separate property, within the otherwise commingled property." *Ott*, 2022-Ohio-2087, at ¶ 6, quoting *Swick v. Swick*, 9th Dist. Wayne No. 20AP0009, 2020-Ohio-6884, ¶ 15, quoting *Salmon v. Salmon*, 9th Dist. Summit No. 22745, 2006-Ohio-1557, ¶ 9. "The burden of proof in such situations is a preponderance of the evidence." *Ott* at ¶ 6, citing *Kolar*, 2018-Ohio-2559, at ¶ 29.

{¶31} Here the issue is not whether Husband was able to trace the settlement funds themselves over the course of the marriage; instead, the issue is whether the settlement funds themselves are comprised of only separate property or a combination of martial and separate property. If the funds are composed of both marital and separate property, and therefore represent commingled property, then it was Husband's duty to identify the portion that was separate. *See id.*

{¶32} The accident that led to the settlement took place before the marriage, on October 8, 2011. The parties were married on October 28, 2011. Husband suffered life-altering injuries in the accident that continue to impact him. Wife was not present at the scene of the accident and did not witness it. At the time of the accident, Husband was 32 years old and was employed, although he did not receive worker's compensation as the accident was not during his working hours. Husband and Wife were both parties to a 2012 lawsuit that arose from Husband's accident. Inter alia, the complaint alleged that Husband "incurred lost wages, and will continue to do so in the future[.]"

{¶33} Ultimately, Husband and Wife separately settled the lawsuit. Wife settled her claims for several hundred dollars. In 2013, Husband settled his claims for several million dollars.

According to the settlement documents, Husband released and discharged the defendants "of and from any and all past, present or future claims, suits, causes of action of whatever kind of character, including, without limitation, tort, contract, punitive, mixed or any other theory of recovery, which [Husband] now has or may hereafter have, resulting or to result from that certain incident which occurred on or about October 8, 2011, * * * including but not limited to those asserted in [the lawsuit.]" In addition, by signing the settlement, Husband agreed that it represented a full settlement of "of all claims of whatever design or character" including, inter alia, claims for personal injury, medical expenses, and "loss or diminution of income or earning capacity[.]" Husband was the only one to sign that document and was the only listed recipient of the funds.

{¶34} Of the money Husband received, after paying attorney fees, medical bills, and other expenses, almost $1,500,000 was used to purchase a structured settlement. From the structured settlement, Husband receives $4,960.00 monthly and an additional lump sum payment every five years. The structured settlement terminates in 2047. The remainder was placed in a Wells Fargo account in Husband's name. By the end of 2017, the balance on the Wells Fargo account had been reduced to zero.

{¶35} Husband remained unemployed until 2022, and Wife was not employed from the date of injury until Fall 2017. The parties, thus, used the funds from the settlement to pay for everyday expenses and substantial purchases.

{¶36} Husband testified that he never intended to make Wife an owner of the accounts holding the settlement funds, her name was never on the accounts, and Husband never intended to gift her any of the funds. Husband did not claim any of the funds from the settlement as income on his tax returns and has never paid income taxes on the personal injury compensation. Husband maintained that none of the money was ever allocated or specified as lost wages. According to

Husband, he received unspecified professional advice that he did not have to claim the settlement funds as income on his tax returns. However, Wife prepared the tax returns that were admitted into evidence at trial.

{¶37} The magistrate, and trial court, concluded that Husband's settlement funds were his separate property and Wife's settlement funds were her separate property. The lower court appears to have concluded that Husband's settlement funds were his separate property because the settlement agreement does not designate any particular portion of the money as for lost wages and because Husband did not pay income taxes on the money.

{¶38} However, we cannot say that the record or case law supports this conclusion. Given the claims raised in the personal injury action along with the language in the settlement document, it can only be concluded that the purpose of at least a portion of the settlement proceeds was to compensate Husband for lost wages. We are mindful that Husband was only 32 years old at the time of the injury, was employed, and absent the injury would have been more than likely employed for years to come. It was Husband's burden to set forth evidence demonstrating which portion of the funds represented his separate property. *See Modon*, 115 Ohio App.3d at 815-816. "In order for [Husband's] separate property to maintain its separate character, he had to trace it to the check. In order to do so, he had the burden of convincing the trial court how much of the check was compensation for his permanent injuries, pain and suffering, and medical expenses." *Id.* at 816. While there has been no dispute that Husband did a thorough job of demonstrating various purchases were made with settlement funds, Husband did not demonstrate which portion of the settlement funds was marital and which portion was separate. *See id.*

{¶39} The trial court's conclusion that all of the settlement proceeds represented Husband's separate property is not supported by the weight of the evidence. Wife's sixth assignment of error is sustained.

{¶40} With respect to the two houses purchased during the marriage, the trial court concluded that they were also separate property because they were purchased with the settlement funds and/or Husband's inheritance. Because the trial court erred in concluding that the settlement funds consisted solely of separate property, the trial court's conclusion with respect to the two houses is likewise not supported by the record. Wife's seventh assignment of error is also sustained.

### ASSIGNMENT OF ERROR VIII

THE COURT ERRED BY FINDING THAT THE JEWELRY AND OTHER ITEMS CHRISTOPHER GIFTED TO HEATHER DURING THE MARRIAGE WERE MARITAL PROPERTY, AND IN FACT THE ONLY MARITAL PROPERTY OF THIS MARRIAGE IS AN ABUSE OF DISCRETION. [SIC]

{¶41} Wife argues in her eighth assignment of error that the trial court erred in finding that items gifted to Wife by Husband were marital property.

{¶42} R.C. 3105.171(A)(6)(a)(vii) provides that separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."

{¶43} Husband testified about an exhibit, which was admitted as evidence, listing numerous gifts that he purchased for Wife. Husband testified that the items were gifts for Wife that he did not expect to get back. While the trial court ultimately did award these items to Wife, the trial court incorrectly characterized them as marital property. At first this may seem harmless;

however, given that the trial court must reconsider the characterization of other property, it is important that, upon remand, these gifts be considered Wife's separate property.

**{¶44}** Wife's eighth assignment of error is sustained.

### ASSIGNMENT OF ERROR IX

THE COURT ERRED BY FAILING TO MAKE AN EQUITABLE DIVISION OF THE MARITAL AND SEPARATE PROPERTY, AS REQUIRED UNDER R.C. 3105.171 IS AN ABUSE OF DISCRETION. [SIC]

### ASSIGNMENT OF ERROR X

THE COURT ERRED BY DETERMINING THAT AN AWARD OF SPOUSAL SUPPORT WAS NOT REASONABLE IN THIS CASE AND THAT THE TRIAL COURT WOULD NOT RETAIN JURISDICTION OF THIS ISSUE IS AN ABUSE OF DISCRETION. [SIC]

**{¶45}** Wife asserts in her ninth assignment of error that the trial court's division of marital and separate property was not equitable. Wife argues in her tenth assignment of error that the trial court abused its discretion in failing to award spousal support.

**{¶46}** Based on our resolution of other assignments of error, we conclude that these assignments of error are not properly before us at this time and decline to address them. *See, e.g., Ott*, 2022-Ohio-2087, at ¶ 28.

### III.

**{¶47}** Wife's sixth through eighth assignments of error are sustained. Her first through fifth assignments of error are overruled. Wife's ninth and tenth assignments of error are not properly before us at this time. The judgment of the Wayne County Court of Common Pleas is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CONCURRING.

{¶48} I concur with the lead opinion except with respect to the resolution of Wife's sixth and seventh assignments of error. According to Revised Code Section 3105.171(A)(6)(a)(vi), separate property includes "[c]ompensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets. . . ." This Court has concluded that when a lump-sum settlement does not designate the portion attributable to

different claims, the injured spouse cannot demonstrate that a portion of the settlement was intended to be "compensation for . . . personal injury" under Section 3105.171(A)(6)(a)(vi). *Poulos v. Poulos*, 2024-Ohio-1769, ¶ 24-25 (9th Dist.). *See also Modon v. Modon*, 115 Ohio App.3d 810, 816 (9th Dist. 1996) (concluding that evidence about what happened to settlement proceeds after the settlement "was irrelevant because of [husband's] failure to adequately trace his separate property into the settlement proceeds."). I would sustain the sixth and seventh assignments of error on this basis, so I concur in judgment only with respect to those assignments of error.

STEVENSON, J.
<u>CONCUR IN PART AND DISSENT IN PART.</u>

{¶49} I respectfully dissent from the majority's opinion on assignments of error six and seven regarding Husband's separate property claim.

{¶50} The majority correctly finds that we review a trial court's decision on separate property claims under a manifest weight of the evidence standard. "Reversal on the manifest weight of the evidence and remand for a new trial are not to be taken lightly." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 31. Further, in weighing the evidence, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "'Only in the exceptional case, where the evidence presented weighs heavily in favor of the party seeking reversal, will the appellate court reverse.'" *In re B. T-H.*, 2022-Ohio-4139, ¶ 12 (9th Dist.), quoting *Boreman v. Boreman*, 2002-Ohio-2320, ¶ 10 (9th Dist.).

{¶51} I cannot find this is an exceptional case where the evidence weighs heavily in Wife's favor. Husband was severely injured in an automobile accident shortly before the marriage. He entered into a settlement of that personal injury claim during the marriage. There is no dispute

that the portions of that claim that represent his pain and suffering are separate property or that any portion of his claim that represent lost wages are marital property. It is undisputed that the settlement statement from the personal injury suit apportioned none of the settlement proceeds to lost wages. It is also undisputed that the parties never claimed any of the settlement proceeds as lost wages on the income tax returns that Wife prepared. Wife does not argue that any of these funds were commingled with marital funds during the marriage.

{¶52} The fact that Husband did not designate any of the proceedings as lost wages on the settlement statement and that the parties did not claim any of the proceeds as wages on their tax returns is strong evidence that the parties intended all the proceeds to be related to pain and suffering when the proceeds were received. There is nothing else Husband could have added to the settlement statement or the tax returns to make it clearer that the money was not for lost wages. Because Wife prepared the tax returns at that time, it is evident that she agreed to that assessment. I find this evidence of the parties' contemporaneous designation of these funds as personal injury proceeds supports the trial court's reasonable inference that the proceeds were solely for Husband's significant pain and injuries from the horrific accident.

{¶53} Generally, in undertaking a manifest weight of the evidence review we will not overturn a decision as being against the manifest weight of the evidence simply because the trier of fact chose to believe one party's version of events over another version. *State v. Tolliver*, 2017-Ohio-4214, ¶ 15 (9th Dist.), citing *State v. Barger*, 2016-Ohio-443, ¶ 29 (9th Dist.). This deference to the trier of fact is a prudential standard that applies because "the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly[,]' and 'is free to believe all, part, or none of the testimony of each witness.'" *Tolliver* at ¶ 15, quoting *State v. Johnson*, 2010-Ohio-3296, ¶ 15 (9th Dist.) and *Prince v. Jordan*, 2004-Ohio-7184, ¶ 35

(9th Dist.). In this case, the trial court heard both parties testify and chose to believe Husband's testimony over Wife. As he was able to produce contemporaneous documentary evidence supporting his testimony that the funds were not for lost income, I do not believe this is the exceptional case that we should overrule a trial court's view of credibility.

{¶54} The concurring opinion in this case relies on *Poulos v. Poulos*, 2024-Ohio-1769 (9th Dist.) and *Modon v. Modon*, 115 Ohio App.3d 810 (9th Dist. 1996). The appellants in both *Poulos* and *Modon* argued that the trial court's finding that settlement proceeds were marital was against the weight of the evidence. In finding the trial court's decisions that property was marital in those cases was not against the weight of the evidence, this Court was not finding the property was marital, just that evidence did not weigh so heavily in appellant's favor that reversal was required. The precedential value of these cases is limited because they were reviewing the specific evidence before those panels and not specifically finding that property was marital. In neither of those cases is there any mention that the parties did not include the awards on their tax returns nor did the trial court find the testimony the property was separate was credible. Although *Poulos* and *Modon* both addressed settlement proceeds and the manifest weight of the evidence standard, there is different evidence in this case. I cannot rely upon the precedent in these cases to overturn the trial court's decision as against the manifest weight.

{¶55} Husband also inherited funds from his father during the marriage which is separate property under R.C. 3105.171(A)(6)(a)(i). As the majority correctly notes, the two houses purchased during the marriage were purchased with the settlement funds and/or Husband's inheritance. Accordingly, the two houses were also separate property. As a reviewing court we are only to find exceptional cases, where the evidence weighs heavily in favor of the appellant, as

against the weight of the evidence. *In re B. T-H.*, 2022-Ohio-4139, at ¶ 12 (9th Dist.).  This is not such a case.

{¶56}  Accordingly, I must respectfully dissent from the majority's decision regarding assignments of error six and seven. I concur with the remainder of the majority's decision.

APPEARANCES:

MICHAEL J. ASH, Attorney at Law, for Appellant.

JOHN E. JOHNSON, JR., Attorney at Law, for Appellee.